2020 IL App (1st) 182462

THIRD DIVISION
December 9, 2020

No. 1-18-2462

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| MARC M. JACOBS and DEBORAH JACOBS, | ) | |
| | ) | Appeal from the |
| Plaintiffs-Appellants, | ) | Circuit Court of |
| | ) | Cook County |
| v. | ) | |
| | ) | |
| YELLOW CAB AFFILIATION, INC., and | ) | 15 L 4995 |
| CORNELIUS C. EZEAGU, | ) | |
| | ) | |
| Defendants, | ) | Honorable |
| | ) | Thomas More Donnelly, |
| (American Country Insurance Company, | ) | Judge Presiding |
| Citation Respondent-Appellee.) | ) | |

_____

JUSTICE ELLIS delivered the judgment of the court, with opinion.
Presiding Justice Gordon and Justice Connors concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiffs Marc and Deborah Jacobs obtained an award of nearly $26 million against

defendants, a cab company and its driver, resulting from a car accident with significant personal

injuries. This case concerns their attempts to collect over $6 million in postjudgment interest

from defendants' insurer in a supplemental citation proceeding.

¶ 2    The insurer deposited the amount of the judgment plus interest with the clerk of the

circuit court a mere 10 days after the judgment, but plaintiffs claim that the deposit of the funds

with the court clerk is not a sufficient "tender" within the meaning of the postjudgment interest

statute. They also claim that a provision in the insurance policy that allows the insurer to circumvent the tender requirement is void as against public policy.

¶ 3    The circuit court disagreed on both points and dismissed the citation proceedings. We agree with the trial court and affirm its judgment.

¶ 4                                    BACKGROUND

¶ 5    On March 17, 2015, plaintiffs obtained a roughly $26 million judgment against defendants, Yellow Cab Affiliation, Inc. (Yellow Cab) and Cornelius C. Ezeagu, for injuries Marc Jacobs suffered in a severe car accident while riding in a Yellow Cab driven by Ezeagu. We affirmed the judgment. See *Jacobs v. Yellow Cab Affiliation, Inc.*, 2017 IL App (1st) 151107.

¶ 6    This case involves plaintiffs' attempt to collect that judgment—specifically, their attempt to recover under an insurance policy issued by American Country Insurance Company (American) that covered Yellow Cab and Ezeagu (the Policy).

¶ 7    The Policy provides that the limit for "ANY ONE ACCIDENT OR LOSS" is $350,000. It also provides, in pertinent part:

> "Supplementary Payments. In addition to the Limit of Insurance, we will pay for the 'insured': *** All interest on the full amount of any judgment that accrues after entry of the judgment in any 'suit' we defend, but our duty to pay interest ends when we have paid, offered to pay or deposited in the court the part of the judgment that is within our Limit of Insurance."

¶ 8    The day after the $26 million judgment, Yellow Cab filed for bankruptcy protection in the United States District Court for the Northern District of Illinois (the Bankruptcy Court).

¶ 9    On March 24, 2015, American filed a motion in the Bankruptcy Court to temporarily lift the bankruptcy stay "to authorize its immediate deposit with the Circuit Court of Cook County *** the Maximum Liability Coverage Limit *** under the Policy."

¶ 10    The Bankruptcy Court granted the motion, lifting the stay "solely for the limited purpose of authorizing [American's] deposit of the Maximum Liability Coverage Limit with the Circuit Court of Cook County with the funds to remain on deposit with the Circuit Court of Cook County until further order of this Bankruptcy Court."

¶ 11    Thus, on March 27, 2015, American deposited $427,319.40 with the clerk of the circuit court of Cook County. That amount reflected the limits of the Policy ($350,000) plus 10 days' worth of interest on the $25.95 million judgment ($77,319.40). It is undisputed that this amount correctly reflected what American owed under the Policy up to that date.

¶ 12    Eventually, in June 2017, Ezeagu filed for Chapter 7 bankruptcy. In January 2018, the Bankruptcy Court entered an order allowing plaintiffs to collect "upon any available insurance policies covering Mr. Ezeagu's liability to [plaintiffs] in according with applicable non-bankruptcy law."

¶ 13    After the January 2018 order, plaintiffs issued a citation to discover assets directed to American. American answered the citation, denying it had any assets of the judgment debtors, Yellow Cab and Ezeagu.

¶ 14    In July 2018, plaintiffs sought a turnover order against American. They acknowledged American's March 2015 deposit of $427,319.40 with the clerk of the circuit court of Cook County. They claimed, however, that this was an insufficient "tender" under the postjudgment interest statute, and that American was still liable for another $6.6 million dollars in interest that had accrued over the last three years.

¶ 15    The circuit court dismissed the citation proceeding. The court found no precedent for plaintiffs' attempt to apply the postjudgment interest statute to American and thus award plaintiffs more money than that to which American's insured would be entitled under the Policy.

¶ 16    This timely appeal followed.

¶ 17                                  ANALYSIS

¶ 18    On appeal, plaintiffs first argue that a deposit with the circuit court is not a "tender" within the meaning of 735 ILCS 5/2-1303 (West 2014), the postjudgment interest statute. They further argue that, if the Policy language on which American relies allows it to subvert the "tender" requirement, that provision is void as against public policy. These are questions of contract and statutory interpretation, issues of law we review *de novo*. *Founders Insurance Co. v. American Country Insurance Co.*, 366 Ill. App. 3d 64, 69 (2006); *Progressive Universal Insurance Co. of Illinois v. Liberty Mutual Fire Insurance Co.*, 215 Ill. 2d 121, 128 (2005).

¶ 19                                       I

¶ 20    In Illinois, once a plaintiff (or counterplaintiff) obtains a monetary judgment against a defendant (or counterdefendant), the plaintiff becomes a "judgment creditor," and the defendant a "judgment debtor." 735 ILCS 5/2-1303 (West 2014). The law provides that the judgment debtor owes postjudgment interest to the judgment creditor until it pays that judgment in full. *Id.* The reason is obvious. A judgment debtor could file postjudgment motions and appeal the judgment to higher courts, consuming several years before it satisfies that judgment. The law recognizes the judgment creditor's entitlement to the use of that money immediately and, if it is not forthcoming, to interest at the rate of 9% per annum until the judgment is satisfied. *Id.*; see *Poliszczuk v. Winkler*, 2011 IL App (1st) 101847, ¶¶ 17-18; *Niemeyer v. Wendy's International Inc.*, 336 Ill. App. 3d 112, 115 (2002).

¶ 21   But the judgment debtor can stop the accrual of postjudgment interest by "tender[ing]" payment of the judgment, costs, and accrued interest to date to the judgment creditor. 735 ILCS 5/2-1303 (West 2014). That solves the problem; the payment of that money "allow[s] the creditor to use the funds to earn interest if he so chooses while the matter is pending" in post-trial litigation or on appeal. *Halloran v. Dickerson*, 287 Ill. App. 3d 857, 865 (1997).

¶ 22   Many defendant-judgment debtors, of course, are covered by liability insurance. These insurance policies will cover the insured's liability for adverse monetary judgments up to a specified limit. But many, if not all of them, also contain provisions concerning the insured's liability for postjudgment interest under section 2-1303. We have referred to these provisions in the case law as "supplementary payments" provisions, which happens to be the title given to that provision in the Policy before us. See, *e.g.*, *Needy v. Sparks*, 74 Ill. App. 3d 914, 916 (1979).

¶ 23   The obvious point of the supplementary-payments provision is to recognize that, in Illinois, under section 2-1303, an insured judgment debtor is immediately liable for postjudgment interest to the judgment creditor, and every day that the judgment creditor is not paid in full on that judgment is another day that postjudgment interest accrues. But the insured judgment debtor is at the mercy of the insurer to pay, per the insurance policy. "Any delay that may cause the accumulation of interest is thus the responsibility of the insurer. And until it has discharged its obligations under the policy it should bear the entire expense of this delay." *River Valley Cartage Co. v. Hawkeye-Security Insurance Co.*, 17 Ill. 2d 242, 245 (1959). These supplementary-payments provisions do just that—they leave the insurer financially liable to its insured for the postjudgment interest until the insurer "discharge[s] its obligations under the policy." *Id.*

¶ 24   These policies sometimes differ, however, in *how* the insurer "discharge[s] its obligations under the policy." *Id.* Often, the policy language essentially mirrors the postjudgment interest

statute, section 2-1303, and provides that the insurer's liability to the insured for postjudgment interest extinguishes when the insurer " 'pay[s]' " or " 'offer[s] to pay' " the full amount of the covered judgment. See, *e.g.*, *Halloran*, 287 Ill. App. 3d at 860. Requiring the insurer to "pay" or "offer to pay" is essentially requiring the insurer to "tender" payment to the judgment creditor.

¶ 25    Other insurance policies, however, contain that "pay" or "offer to pay" language but provide a third option of allowing the insurer to deposit that full amount of the covered judgment with the clerk of the relevant court. See, *e.g.*, *River Valley*, 17 Ill. 2d at 244; *Needy*, 74 Ill. App. 3d at 918. The Policy before us falls into this latter category, including the option of deposit with the court clerk: As noted earlier, American's duty to pay postjudgment interest on behalf of its insured ended "when we [American] have paid, offered to pay or deposited in the court the part of the judgment that is within our Limit of Insurance."

¶ 26    And as we noted above, American chose that third option, depositing with the clerk of the circuit court of Cook County the full amount of the judgment that was within its coverage limit ($350,000), plus postjudgment interest accrued to that date ($77,319.40). (Why American chose that more unusual option, instead of paying plaintiffs directly, is not altogether clear. It appears from the bankruptcy filings in the record that American chose that option because each of its insureds was under federal bankruptcy protection, and thus plaintiffs' claim to the money might be subject to competing claims of other creditors. American presumably thought it wiser to stay out of that fight, deposit the money with the court clerk, and let a bankruptcy judge sort out any competing claims.)

¶ 27    Plaintiffs do not deny that American followed the terms of the Policy, nor do they dispute that this amount correctly reflected what American owed under the Policy up to that date. Instead, plaintiffs argue that American was required to comply with the terms of the

postjudgment interest statute we have referenced, section 2-1303. See 735 ILCS 5/2-1303 (West 2014). The relevant portion of that statute reads as follows:

> "Judgments recovered in any court shall draw interest at the rate of 9% per annum from the date of the judgment until satisfied \*\*\*. \*\*\* *The judgment debtor may by tender of payment of judgment, costs and interest accrued to the date of tender, stop the further accrual of interest on such judgment* notwithstanding the prosecution of an appeal, or other steps to reverse, vacate or modify the judgment." (Emphasis added.) *Id.*

¶ 28    A substantial body of case law has developed over what is a sufficient "tender" by the judgment debtor, none of which is contested by American. It is settled, for example, that a "tender" under section 2-1303 must be an *unconditional* offer to pay. See *Niemeyer*, 336 Ill. App. 3d at 115. The law is also clear that, to satisfy the obligation, the "tender" must include the full amount due and owing, including the judgment, costs, and postjudgment interest; anything less is insufficient. See *Pinkstaff v. Pennsylvania R.R. Co.*, 31 Ill. 2d 518, 526 (1964); *Yassin v. Certified Grocers of Illinois, Inc.*, 133 Ill. 2d 458, 464 (1990).

¶ 29    And as plaintiffs claim, there is also support in the case law for the proposition that a deposit of the funds with a court clerk, instead of direct payment to the plaintiff-judgment creditor, is insufficient to constitute a "tender" under section 2-1303. See *Halloran*, 287 Ill. App. 3d at 865 ("Section 2-1303 makes no mention of the circuit clerk as a proper person to receive the funds," and thus, absent agreement between parties, "[t]ender to the clerk was improper"); *Thomas v. Missouri-Illinois R.R. Co.*, 30 Ill. App. 3d 40, 42 (1975) ("We question seriously" whether deposit of full amount due with court clerk would have constituted proper tender, as "[n]owhere in the statutes does the authorization for this procedure appear"). That stands to reason. The entire point of a "tender" is to put the money in the hands of the judgment creditor,

and putting the funds into a clerk fund, usually subject to conditions or at least judicial approval, is not an unconditional handing over of the money. See *Halloran*, 287 Ill. App. 3d at 865.

¶ 30    The problem for plaintiffs, however, as American correctly notes, is that section 2-1303 does not govern American's actions in satisfying its obligations to its insured; the only thing American must satisfy is the terms of its insurance policy. That is clear, first and foremost, by the plain language of section 2-1303, which governs tenders by "judgment debtor[s]." 735 ILCS 5/2-1303 (West 2014) ("The judgment debtor may by tender of payment of judgment, costs and interest accrued to the date of tender, stop the further accrual of interest on such judgment ***."). The judgment debtors here—the parties who lost at trial and who now owe plaintiffs nearly $26 million—are Yellow Cab and Ezeagu. But they are not the parties from whom plaintiffs seek to turn over $6.6 million in interest payments.

¶ 31    Plaintiffs seek that interest payment from American, the *insurer* of those judgment debtors. Section 2-1303 does not apply to attempts by the judgment debtor's insurer to discharge the full limits of its insurance policy. See *Casciola v. Gardner*, 101 Ill. App. 3d 852, 856 (1981) (predecessor to section 2-1303 "applies to payment in full by a judgment debtor and has no application to the situation at bar involving an insurance carrier in the process of discharging its policy obligation" (interpreting Ill. Rev. Stat. 1979, ch. 74, ¶ 3)); *Poliszczuk*, 2011 IL App (1st) 101847, ¶ 18 (relying on case law interpreting predecessor to section 2-1303, as it was "nearly identical to" section 2-1303 and thus "the purpose and meaning of [section 2-1303] would be the same").

¶ 32    Section 2-1303 says nothing about *insurers* of judgment debtors. And there is no reason why it would. An insurer of a defendant owes no duty to, and has no direct relationship with, that lawsuit's plaintiff. An insurer owes a contractual duty only to its insured, a relationship that is

framed entirely by the terms of the insurance contract between them. *Waste Management, Inc. v. International Surplus Lines Insurance Co.*, 144 Ill. 2d 178, 191 (1991).

¶ 33     That is not to suggest that an insurer never "tenders" a judgment to a plaintiff-judgment creditor to stop the accrual of postjudgment interest. That is a common occurrence. See, *e.g.*, *Poliszczuk*, 2011 IL App (1st) 101847, ¶ 6 (insurer attempted to "tender" judgment on behalf of insured judgment debtor). Just as it often provides a defense for its insured, just as it often indemnifies its insured for a resulting judgment award, an insurer will often "tender" a judgment to a plaintiff-judgment creditor to stop the accrual of postjudgment interest. But none of those actions are compelled by statute; they are compelled by the terms of its insurance contract. The insurer's "tender" of a judgment is not to comply with section 2-1303 but to "discharg[e] its obligations under the policy" with the judgment debtor. *River Valley*, 17 Ill. 2d at 245.

¶ 34     To be sure, the insurer's discharge of its obligation under the supplementary-payments provision may have the effect, as well, of satisfying its insured's obligation as a judgment debtor under section 2-1303. If the insurer pays directly to the plaintiff-judgment creditor the proper amount of judgment, two things happen simultaneously—the insurer complies with the policy, and its insured complies with section 2-1303. But if the insurer has another option under the policy, such as depositing the proper amount with the court clerk, the insurer is free to choose that option. See *Needy*, 74 Ill. App. 3d at 920 (insurer may choose among options for discharging liability for postjudgment interest under supplementary-payments provision). And whether that option absolves its insured, the judgment debtor, from liability under section 2-1303 is irrelevant to the question of whether the insurer has satisfied *its* obligation under the insurance policy.

¶ 35     The fact that we find this matter at the stage of a postjudgment supplemental proceeding changes nothing. In such a proceeding, the plaintiff-judgment creditor steps into the shoes of the

insured judgment debtor and collects directly from the insurer. But as the circuit court correctly emphasized, that judgment creditor, in the shoes of the insured judgment debtor, is entitled to no more than that to which the judgment debtor itself would be entitled under the insurance policy. See *Second New Haven Bank v. Kobrite, Inc.*, 86 Ill. App. 3d 832, 835 (1980).

¶ 36    In other words, plaintiffs may collect from American only what Yellow Cab and Ezeagu, whom they are supplanting, could collect. *Schneider v. Autoist Mutual Insurance Co.*, 346 Ill. 137, 139 (1931) (it is "elementary" that judgment creditor may only recover from insurance company to extent insured judgment debtor could); *Insurance Co. of North America v. Cape Industries, Ltd.*, 138 Ill. App. 3d 720, 724 (1985) ("the rights of the judgment creditor against the insurer are no better than those of the [insured] tortfeasor"); *Reisman v. Delgado*, 117 Ill. App. 3d 331, 333 (1983) (" ' "a claim asserted by a judgment creditor against a garnishee must be one which the judgment debtor himself could have maintained" ' ").

¶ 37    So the question is not whether American complied with section 2-1303, but whether it complied with the terms of its Policy with Yellow Cab and Ezeagu. There is no real dispute that American has done so.

¶ 38    Again, the Policy requires American to pay its insured, Yellow Cab and Ezeagu, "all interest on the full amount of any judgment that accrues after entry of the judgment ***, but our duty to pay ends when we have paid, offered to pay or *deposited in the court the part of the judgment that is within the Limit of Insurance*." (Emphasis added.)

¶ 39    In compliance with that language, American deposited with the court the full amount of its policy limit ($350,000) plus all interest having accrued to that date ($77,319.40). There is no dispute that American followed the terms of the Policy and paid an amount that reflected what American owed under the Policy up to that date.

¶ 40    American has thus fully discharged its contractual responsibility to its insureds, the judgment debtors Yellow Cab and Ezeagu. Plaintiffs, in the shoes of those judgment debtors, may recover nothing further from American. We thus agree with the reasoning and judgment of the circuit court, which correctly dismissed the citation proceedings.

¶ 41    Plaintiffs rely primarily on case law that involved the liability of judgment debtors under section 2-1303. See, *e.g.*, *Poliszczuk*, 2011 IL App (1st) 101847, ¶¶ 4-9; *Niemeyer*, 336 Ill. App. 3d at 113; *Thomas*, 30 Ill. App. 3d at 41; *Steward v. Yoder*, 86 Ill. App. 3d 223, 225 (1980). None of those cases applied section 2-1303 to the question here of the *insurer's* liability for postjudgment interest under a supplementary-payments provision.

¶ 42    The principal decision on which plaintiffs rely, the 1959 decision of our supreme court in *River Valley*, 17 Ill. 2d 242, fully supports our position that the language of the insurance policy, not a postjudgment interest statute, controls an insurer's liability to its insured (or to a judgment creditor in the shoes of the insured) for postjudgment interest. The plaintiff there obtained a $175,000 personal-injury judgment against the defendant. *Id.* at 243. The defendant had liability insurance with a policy limit of $50,000 and a supplementary-payments provision much like the one before us, which required the insurer to pay " 'all interest accruing after entry of judgment until the [insurer] has paid, tendered or deposited in court such part of the judgment as does not exceed the limit of the [insurer's] liability thereon.' " *Id.* at 243-44.

¶ 43    Over a year after the judgment, on the insured's behalf, the insurer offered the plaintiff $50,000, the limits of its coverage but without any postjudgment interest whatsoever. *Id.* at 243. The plaintiff refused, claiming a right to postjudgment interest on the entire amount of the judgment, and commenced supplemental garnishment proceedings against the insurer. *Id.* The questions before the supreme court were (1) whether the postjudgment interest was calculated on

the portion of the judgment within the policy limits ($50,000) or on the entire judgment award ($175,000) and (2) whether the interest stopped accruing when the insurer tendered the $50,000 and the plaintiff rejected it. *Id.* at 244.

¶ 44 Our supreme court first held that postjudgment interest was calculated on the entire judgment award, not just the part the insurer was obligated to cover, and that the tender of $50,000 without a nickel of postjudgment interest was insufficient. *Id.* at 246-47. Each of these holdings from the supreme court in 1959 is by now long settled in this state; what is important about *River Valley* is how the supreme court reached those holdings.

¶ 45 From the outset, our supreme court emphasized that "[t]he case turns upon the interpretation of the clause in the insurer's policy by which it obligated itself" to cover the defendant's postjudgment interest. *Id.* at 244. The court held that interest was calculated on the entire judgment award of $175,000 because, "[i]n the first place, the insurer's language compels such a conclusion." *Id.* at 245. On the second question, whether the insurer's offer of $50,000 was sufficient to stop the insurer's liability for postjudgment interest, the court reiterated that this "question must be appraised in terms of the rights of the insured against the insurer, because by this garnishment proceeding the plaintiff seeks to reach the indebtedness of the insurer to the insured." *Id.* at 246.

¶ 46 The clear takeaways from *River Valley* are that (1) an insurer's liability to a judgment creditor in a supplementary proceeding is defined and limited by the terms of its insurance policy with the insured-judgment debtor, and (2) the judgment creditor is entitled to no more than the insured-judgment debtor could collect from that insurer. Though the court did discuss the sufficiency of the insurer's "tender" to plaintiff, it did so not because of section 2-1303 or its predecessor—they did not factor into the analysis whatsoever—but because the insurance policy

*itself* allowed the insurer to avoid further liability for interest once it " 'tendered' " (*id.* at 244) payment of the judgment plus postjudgment interest to the plaintiff. The term "tender" came from the policy, not a statute.

¶ 47    The final case on which plaintiffs rely is *Halloran*, 287 Ill. App. 3d at 859, involving a $2.5 million judgment at trial against a defendant who was insured by Union Automobile Insurance Company (Union) in the amount of only $25,000. The insurance policy there contained a supplementary-payments provision under which Union agreed to cover its insured for postjudgment interest until Union " 'offer[s] to pay that part of the judgment which does not exceed our limit of liability for this coverage.' " *Id.* at 859-60. But instead of offering to pay plaintiff directly, Union "mailed a check for $49,041.16 to the Madison County circuit clerk's office to be placed in an escrow account." *Id.* at 860.

¶ 48    This court held that Union's actions did not stop the accrual of postjudgment interest. The court began by noting that the language of the insurance policy was critical to the analysis: "In this case, we must apply these rules in light of the insurance policy provisions in question." *Id.* at 864. For a host of different reasons, this court held that the payment made by Union was insufficient to stop the accrual of interest.

¶ 49    For one thing, though the policy allowed Union to stop further accrual of postjudgment only when it " 'offer[ed] to pay that part of the judgment' " within its policy limits (*id.* at 860), Union did not do so—instead, it placed the funds with the court clerk, which was not an option under the policy (*id.* at 865). For another, the amount Union mailed was insufficient; on the day the clerk received the funds, the total judgment plus accrued interest amounted to $49,394.44, but Union only sent a check for $49,041.16. *Id.* at 864-65. Third, Union objected when the plaintiff tried to withdraw the money from the court clerk, so it could hardly be considered an

unconditional payment. *Id.* at 866. And finally, once the plaintiff was able to gain access to the funds, the plaintiff was charged a substantial fee by the circuit court clerk, thereby reducing the overall sufficiency of the payment further still. *Id.*

¶ 50    The court summarized as follows:

> "(1) Union's purported tender was made to the wrong person; (2) it was an insufficient amount; (3) it was rendered even more insufficient by the deduction of the clerk's fee; (4) it was not unconditional; and (5) and when payment was finally made to the plaintiff, it did not even satisfy the accrued interest." *Id.* at 866-67.

¶ 51    Every one of these deficiencies could be tied directly back to Union's failure to comply with its policy provision, which allowed Union to stop further accrual of postjudgment interest only when Union "offers to pay" the part of the judgment that was covered by the policy. Unlike the supplementary-payments provision before us, the one in *Halloran* contained no provision for depositing the money with the court clerk. And paying less than the full amount due, objecting when the plaintiff tried to access it, and subjecting the plaintiff to a substantial clerk's fee when it finally accessed the money, could hardly qualify as an adequate "offer to pay."

¶ 52    Though in that sense *Halloran* is entirely consistent with everything we have said above, we isolate this case because the court did discuss section 2-1303's requirement of an unconditional tender. See *id.* at 866. It might be tempting, at first blush, to read *Halloran* for the proposition that an insurer must comply with section 2-1303 when it satisfies its *contractual* obligation to its insured. For all the reasons we have given above, that is not and cannot be correct. The insurer's duty is to its insured, and it owes a judgment creditor in a supplemental proceeding no more than what it owes its insured. *River Valley*, 17 Ill. 2d at 244, 246. To the

extent that *Halloran* held otherwise and applied section 2-1303 to an insurer's discharge of its contractual obligations to its insured, we would respectfully depart from that reasoning.

¶ 53    But we do not read *Halloran* that way. Analogy to section 2-1303 made sense, because the particular insurance policy at play there contained only one action that Union could take to stop the accrual of postjudgment—an "offer to pay" that portion of the judgment that was covered by insurance, plus postjudgment interest to date. *Halloran*, 287 Ill. App. 3d at 860. An "offer to pay" the plaintiff-judgment creditor directly is the functional equivalent of a "tender" to the plaintiff-judgment creditor under section 2-1303, and thus the rules governing a section 2-1303 "tender" would be helpful guideposts in determining whether an insurer's "offer to pay" was adequate under the terms of the insurance policy.

¶ 54    And with all of that said, *Halloran* is distinguishable, in any event, because unlike the insurer in *Halloran*, American was entitled under the Policy to deposit its covered judgment with the clerk of the circuit court of Cook County. It is undisputed that American did so. Plaintiffs are entitled to nothing further from American.

¶ 55                                            II

¶ 56    Plaintiffs finally claim that the supplementary-payments provision in the Policy is unenforceable as against public policy. They argue, first, that this provision allows American and its insured to improperly abridge plaintiffs' legal right to interest and thus contravenes the purpose behind section 2-1303. They next argue that this clause in the policy thwarts the purpose and spirit of the law requiring taxicabs to be insured.

¶ 57    Plaintiffs are correct that a "statute that exists for protection of the public cannot be rewritten through a private limiting agreement." *Progressive Universal*, 215 Ill. 2d at 129. "One reason for that rule is that 'the members of the public to be protected are not and, of course,

could not be made parties to any such contract.' " *Id.* (quoting *American Country Insurance Co. v. Wilcoxon,* 127 Ill. 2d 230, 241 (1989)).

¶ 58    Still, as we recognize the importance of freedom of contract, we exercise the decision to void a contract sparingly. *Id.*; see also *First National Bank of Springfield v. Malpractice Research, Inc.*, 179 Ill. 2d 353, 359 (1997). We will not invalidate a contract or provision of that contract on public-policy grounds "unless it is clearly contrary to what the constitution, the statutes or the decisions of the courts have declared to be the public policy or unless it is manifestly injurious to the public welfare." *Progressive Universal*, 215 Ill. 2d at 129-30.

¶ 59    We cannot accept the premise of plaintiff's arguments that the supplementary-payments provision, or American's actions here, modified plaintiffs' right to postjudgment interest or otherwise contravened section 2-1303. As we have said above, section 2-1303 does not dictate how an insurer discharges its obligations to its insured. See *River Valley*, 17 Ill. 2d at 244, 246; *Casciola*, 101 Ill. App. 3d at 856.

¶ 60    These supplementary-payments provisions are obviously *related* to section 2-1303—they would not exist but for the fact that in Illinois, under section 2-1303, defendant-judgment debtors are liable for postjudgment interest. These insurance provisions are intended to protect the insured from delays in indemnification by the insurance company. See *River Valley*, 17 Ill. 2d at 245. In that sense, these supplementary-payments provisions promote the sound public policy of incentivizing insurance companies to quickly pay out judgments to plaintiff-judgment creditors in situations where many of their insured judgment debtors could not, and where otherwise the insured judgment debtor would suffer from a delay in payments.

¶ 61    These provisions do no violence to section 2-1303 or its purpose. Nothing American did here impacted plaintiffs' right to statutory postjudgment interest, at a rate of 9% per annum, until

such time as the judgment debtors (Yellow Cab and Ezeagu), either themselves or through their insurer, tender the full judgment to them. Yellow Cab and Ezeagu still owe plaintiffs postjudgment interest and will continue to do so until they tender the full judgment or, as may be true here, the matter is resolved in a bankruptcy court. Either way, plaintiffs' right to statutory interest remains, irrespective of whether American has or has not fulfilled its own contractual duties to the insured. The parties to the insurance policy—American, Yellow Cab, and Ezeagu—did not "contract around" section 2-1303 or contravene that statute in any way.

¶ 62    We must likewise respectfully disagree that the Policy language here is inconsistent with the public policy behind mandatory insurance for taxicab operators. See 625 ILCS 5/8-101 (West 2014). The purpose of that law is to ensure that members of the public, injured by the negligence of cabdrivers, "are not left uncompensated." *Wilcoxon*, 127 Ill. 2d at 239. But it is "not intended to provide full coverage for losses;" rather, its purpose is "to provide members of the public with some modicum of protection against negligent drivers of these various types of vehicles." *Nelson v. Artley*, 2015 IL 118058, ¶ 15.

¶ 63    Plaintiffs do not claim that the Policy's coverage of $350,000 was below the mandatory minimum amount at the time. And while that amount fell far short of $25.9 million, the Policy clearly provided "some modicum of protection" (*id.*) to the public. More to the point, we do not see how American's actions in depositing the money with the circuit court clerk (assuming it even had a choice, given the bankrupt status of both its insureds), or the Policy provision that allowed American to do so, violates the letter or spirit of that statute in any way. Again, that is particularly true because, as we have repeatedly noted above, nothing that American did affected plaintiffs' right to the recovery of postjudgment interest from the parties against whom plaintiffs have the right to recover under section 2-1303—the judgment debtors, Yellow Cab and Ezeagu.

¶ 64    While we are sympathetic that plaintiffs may have difficulty obtaining their entire judgment, plus postjudgment interest, from the judgment debtors, that is a function of the bankruptcy laws and not anything that American did or failed to do. We must therefore respectfully disagree that the supplementary-payments provision in the Policy is unenforceable or contrary to public policy.

¶ 65                                    CONCLUSION

¶ 66    The judgment of the circuit court is affirmed in all respects.

¶ 67    Affirmed.

**No. 1-18-2462**

| | |
|---|---|
| **Cite as:** | *Jacobs v. Yellow Cab Affiliation, Inc.*, 2020 IL App (1st) 182462 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 15-L-4995; the Hon. Thomas More Donnelly, Judge, presiding. |
| **Attorneys for Appellant:** | Timothy S. Tomasik and Patrick J. Giese, of Tomasik Kotin Kasserman, Robert A. Clifford, of Clifford Law Offices, P.C., and Andrew R. Schwartz, Thomas Kanyock, and Karen I. Bridges, of Schwartz & Kanyock, LLC, all of Chicago, for appellants. |
| **Attorneys for Appellee:** | John J. Piegore and Edric S. Bautista, of Sanchez Daniels & Hoffman, LLP, and Brian L. Shaw, of Fox Rothschild LLP, both of Chicago, for appellee. |