2023 IL App (1st) 220451

FIRST DISTRICT
THIRD DIVISION
March 29, 2023

No. 1-22-0451

| | | |
|---|---|---|
| PANOS TRADING LLC, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| RICHARDO FORRER, JOSEPH HAYES, and | ) | No. 11 CH 42915 |
| JACQUES FERNANDES, | ) | |
| | ) | |
| Defendants- Appellees | ) | |
| | ) | Honorable |
| (Louis Panos, | ) | Patrick J. Heneghan, |
| | ) | Judge Presiding. |
| Third-Party Respondent-Appellant). | ) | |

JUSTICE REYES delivered the judgment of the court, with opinion.
Justices Burke and D.B. Walker concurred in the judgment and opinion.

**OPINION**

¶ 1    Richardo Forrer, Joseph Hayes, and Jacques Fernandes (collectively, the Forrer Group)

are former members of Panos Trading LLC (Panos Trading), an Illinois limited liability company

that was engaged in the proprietary trading of financial instruments. After a dispute regarding the

division of profits, the Forrer Group obtained an arbitration award of $1.295 million against

Panos Trading, and the circuit court of Cook County confirmed the arbitration award in 2012.

During citation proceedings, the Forrer Group discovered that Panos Trading was unable to fully

satisfy the judgment. The Forrer Group filed a petition under the Illinois Uniform Fraudulent

Transfer Act (UFTA) (740 ILCS 160/1 *et seq.* (West 2012)) to recover amounts that had been

transferred previously by Panos Trading to its manager and member, Louis Panos (Louis).

Following extensive litigation—including a prior appeal to this court—the circuit court

concluded that the amount owed on the judgment against Panos Trading, plus accrued interest, was approximately $956,000 as of February 28, 2022. To satisfy this obligation, the circuit court avoided and reversed 10 transfers from Panos Trading to Louis that had occurred between 2009 and 2011.

¶ 2 Louis advances three primary arguments on appeal. He initially contends that the circuit court erred in failing to dismiss the UFTA petition after the underlying judgment became dormant under Illinois law. He next asserts that the circuit court did not comply with this court's remand instructions in its earlier decision by failing to consider evidence of Panos Trading's liquidity. Finally, Louis argues that the circuit court erred in its calculation of postjudgment interest by failing to terminate such interest when the Forrer Group purportedly refused Louis's tender of payment in 2017. For the reasons discussed below, we reject the foregoing contentions and affirm the judgment of the circuit court.

¶ 3                                      BACKGROUND

¶ 4                               *Arbitration Proceedings*

¶ 5 Panos Trading was an exchange trading permit holder on the Chicago Board Options Exchange (CBOE), a self-regulating organization. The Class B members of Panos Trading included the Forrer Group; Louis was the sole Class A member.

¶ 6 A dispute regarding the division of profits arose between the Forrer Group and Panos Trading in 2008. After unsuccessful negotiations, the Forrer Group initiated an arbitration proceeding before the CBOE against Panos Trading and Louis, alleging breach of contract and other claims. In late 2011, the arbitration panel partially granted the Forrer Group's request for compensatory damages against Panos Trading (but not Louis) in the amount of $1,295,001.

¶ 7 Panos Trading filed a petition to vacate the arbitration award in the circuit court of Cook

County, alleging that the CBOE did not disclose certain potential conflicts of interest of the chairman of the arbitration panel; the petition ultimately was denied. The Forrer Group filed a counterpetition to confirm the arbitration award. In an order entered on April 5, 2012, the circuit court confirmed the arbitration award and entered judgment in the amount of $1,295,001.

¶ 8                    *Citation Proceedings and UFTA Petition*

¶ 9    During a citation examination, Louis testified that Panos Trading could not satisfy the judgment. Panos Trading apparently had ceased operations and was generating minimal income. After recovering against various accounts through citation proceedings, the balance owed to the Forrer Group was approximately $882,000 as of November 2012.

¶ 10    In December 2012, the Forrer Group filed a petition to recover funds from Louis and from Craig Callahan[1]—a class B member of Panos Trading—pursuant to the UFTA, a statutory scheme that provides creditors with remedies when a debtor transfers assets that would otherwise be available to satisfy indebtedness. The UFTA petition alleged that bank statements, tax returns, and other documents revealed that Panos Trading had transferred more than $9 million in cash collectively to Louis and Callahan from 2008 to 2011. According to the Forrer Group, the transfers were fraudulent under sections 5 and 6 of the UFTA, which address actual and constructive fraud.[2]

¶ 11    Louis filed a motion to dismiss the UFTA petition pursuant to section 2-619.1 of the

---

[1]Callahan eventually settled with the Forrer Group and is not a part of the instant appeal. We only discuss matters involving Callahan to the extent necessary for resolution of this appeal.

[2]To establish actual fraud under section 5(a)(1) of the UFTA, a creditor must prove by clear and convincing evidence that the transfer was made with actual intent to hinder, delay, or defraud creditors. 740 ILCS 160/5(a)(1) (West 2012). Sections 5(a)(2) and 6(a) of the UFTA address constructive fraud, which does not require proof of actual intent to defraud. *A.G. Cullen Construction, Inc. v. Burnham Partners, LLC*, 2015 IL App (1st) 122538, ¶ 27. Under section 5(a)(2), transfers made for less than reasonably equivalent value, leaving a debtor unable to meet its obligations, are presumed fraudulent. 740 ILCS 160/5(a)(2) (West 2012). Although similar to section 5(a)(2), section 6(a) only pertains to claims arising before the allegedly fraudulent transfer and requires that, at the time of the transfer, the transferor

Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2012)). He argued that the Panos

Trading limited liability company agreement (LLC agreement) and the Illinois Limited Liability

Company Act (LLC Act) (805 ILCS 180/1-1 *et seq.* (West 2012)) barred the Forrer Group from

pursuing claims against him individually. Louis also asserted that the petition failed to state a

claim under section 6 of the UFTA (740 ILCS 160/6 (West 2012)). Louis maintained that the

Forrer Group were not creditors of Panos Trading before the transfers—and Panos Trading was

not insolvent at the time of the transfers—as is required for avoidance under section 6.

¶ 12     The Forrer Group responded, in part, that the LLC agreement and the LLC Act were not

relevant, as Louis was not being held personally liable in his capacity as a member of Panos

Trading but rather as a recipient of fraudulent transfers that rendered Panos Trading unable to

pay the amounts owed to the Forrer Group.

¶ 13     In an order entered in October 2013, the circuit court denied most of the relief requested

in Louis's motion to dismiss. The circuit court, however, dismissed the Forrer Group's claims

under section 6 of the UFTA as to transfers that occurred prior to November 3, 2019, *i.e.*, the

date that the CBOE arbitration was initiated. The circuit court reasoned that the respondents were

not "creditors" before that date, as is required by the UFTA.

¶ 14     After filing an answer to the complaint and affirmative defenses, Louis filed a motion for

summary judgment under section 2-1005 of the Code (735 ILCS 5/2-1005 (West 2014)). Louis

advanced multiple arguments as to the remaining claims, including that (a) the Forrer Group

were not creditors of Panos Trading, (b) Panos Trading was not insolvent at the time of the

transfers, and (c) even if the Forrer Group were considered "creditors," there was no actual intent

to defraud any creditors of Panos Trading. He noted that Panos Trading satisfied the minimum

was insolvent or made insolvent as a result thereof. 740 ILCS 160/6(a) (West 2012).

capital requirements of the CBOE and the U.S. Securities and Exchange Commission and was never barred from trading. Alternatively, Louis asserted that the LLC agreement limited his liability to his current capital contribution, *i.e.*, $239,389 at the time of the arbitration award.

¶ 15     In a cross-motion for summary judgment, the Forrer Group argued that their claim arose before the challenged transfers, the transfers were capital distributions for which no reasonably equivalent value was received, and Panos Trading was insolvent at the time of the transfers.

¶ 16     The circuit court entered a memorandum decision in December 2015, which denied Louis's motion for summary judgment and granted the Forrer Group's motion as to the UFTA section 6(a) claims against Louis (and Callahan). The Forrer Group then filed a motion for entry of a money judgment that effectively requested the reversal of all transfers made between mid-2010 and October 17, 2011. Louis filed a combined opposition to the motion and a motion for reconsideration of the memorandum decision. The circuit court granted the Forrer Group's motion for entry of a money judgment and denied Louis's request for reconsideration.

¶ 17                    *Appellate Court Decision*

¶ 18     Louis and Callahan filed timely appeals to this court, which were consolidated. In a Rule 23 order filed on June 29, 2017 (*Panos Trading, LLC v. Forrer*, 2017 IL App (1st) 161460-U; Ill. S. Ct. R. 23(b) (eff. July 1, 2011)), this court addressed Louis's contention that the circuit court applied the incorrect insolvency standard to determine which transfers could be reversed to satisfy Panos Trading's debt. Louis had argued that the LLC Act provides an "accounting book" insolvency test—*i.e.*, an examination of the company's balance sheets—which differed from the UFTA insolvency standard. In rejecting this contention, this court observed that it is "well settled law" that a UFTA petitioner is not required to demonstrate accounting book insolvency and that insolvency for purposes of a UFTA claim means that a debtor has not retained sufficient assets

after a transfer to discharge its obligations to its creditors.

¶ 19     This court also rejected Louis's arguments that the Forrer Group were not creditors, that the UFTA petition was untimely, and that any judgment should be capped at his capital contribution amount at the time of the arbitration award. This court further found that Louis had waived any challenge to the collection of postjudgment interest, as his appellate arguments were neither clear nor supported by authority, in violation of Illinois Supreme Court Rule 341(h)(7) (eff. July 1, 2008).

¶ 20     Callahan had joined in Louis's arguments but raised additional challenges, one of which this court determined to be potentially meritorious. Specifically, Callahan asserted that a $350,000 transfer he received on September 29, 2011, was not a capital distribution but was instead the repayment of a short-term loan he had made so Panos Trading could meet a margin call. This court found that the record presented a factual dispute as to the proper characterization of the $350,000 transaction and whether the source of the funds exempted them from the UFTA claim. This court affirmed the entry of summary judgment for the Forrer Group "in all respects with the exception of the $350,000 transfer" and "remand[ed] for further proceedings so that the circuit court may determine which of the numerous transfers, including the $350,000 transfer, should be avoided in order to satisfy Panos Trading's judgment debt to the Forrer [G]roup." *Panos Trading*, 2017 IL App (1st) 161460-U, ¶ 30. This court also affirmed "all aspects of the money judgment and reconsideration orders," except the $350,000 transfer. *Id.* ¶ 31. The order concluded: "Affirmed in part, vacated in part, and remanded for further proceedings." *Id.* ¶ 32. Louis and Callahan filed petitions for leave to appeal to the Illinois Supreme Court, which were

denied.

¶ 21                                   *Proceedings on Remand*

¶ 22    Louis subsequently filed a motion to vacate in the circuit court, arguing that a judgment creditor ordinarily cannot litigate a UFTA lawsuit in the context of a supplementary proceeding without authorization. He maintained that the Forrer Group's "unauthorized" case was a "legal nullity" and did not properly invoke the circuit court's jurisdiction to add new parties (*i.e.*, Louis and Callahan) and resolve the UFTA claims. The circuit court ultimately agreed with the Forrer Group's position that there was no jurisdictional defect, finding that creditors need not request leave to file a fraudulent transfer claim against a third party in a supplemental proceeding.

¶ 23    The Forrer Group filed a renewed motion for summary judgment. After conceding that the $350,000 transfer to Callahan constituted the repayment of a loan, the Forrer Group maintained that Louis was responsible for $825,642.41, including postjudgment interest. Louis responded, in part, that the motion miscalculated the amount he owed. Specifically, he argued that his obligation to pay postjudgment interest terminated as of August 11, 2017, when the Forrer Group purportedly refused his offer to pay the outstanding balance plus all interest. The Forrer Group countered, in part, that Panos never offered a full and unconditional tender of the amount due, which would terminate the accrual of interest.

¶ 24    In a supplemental brief, Louis argued that this court's decision—*i.e.*, vacating the money judgment—eliminated his liability to pay postjudgment interest. He contended that, if an appellate court issues a remand order that may change the amount due, the postjudgment interest runs from the date of the new judgment. In a second supplemental brief, Louis asserted that the Rule 23 order directed the circuit court to determine which of the transfers were voidable under the UFTA, which required an analysis of Panos Trading's liquidity on the date of each transfer.

The Forrer Group responded, in part, that the Rule 23 order already decided against Louis on the issue of the UFTA insolvency standard and its application to the transfers.

¶ 25    While the Forrer Group's renewed summary judgment motion was pending, Louis filed a motion to dismiss, arguing that the judgment against Panos Trading on April 5, 2012, became dormant under Illinois law seven years later (on April 5, 2019) and thus all supplementary proceedings based on the judgment—including the UFTA petition—became unenforceable. The Forrer Group then filed a petition to revive the judgment, which was granted. The circuit court denied Louis's motion, noting there is no authority for dismissing a supplemental proceeding when the underlying judgment becomes dormant during the pendency of the proceeding.

¶ 26    In a memorandum opinion and order entered on February 28, 2022, the circuit court found that this court already ruled on the proper standard of insolvency under the UFTA and had affirmed the circuit court's determination that Panos Trading rendered itself insolvent for purposes of the Forrer Group's claim under section 6(a) of the UFTA. The circuit court further concluded that the $350,000 payment to Callahan did not constitute a fraudulent transfer. As to the calculation of interest, the circuit court found that interest began to accrue at the statutory rate of 9% commencing on April 5, 2012, the date of the order confirming the arbitration award. The circuit court also determined that the interest continued to accrue during the appeal and during the period prior to the revival of the underlying judgment. After calculating the total judgment against Panos Trading as $956,089.40, the circuit court avoided and reversed 10 enumerated transfers that had occurred between 2009 and 2011. Louis filed this timely appeal.

¶ 27                                ANALYSIS

¶ 28    Louis advances three primary arguments on appeal. First, he asserts that the circuit court erred in failing to dismiss the UFTA petition after the underlying judgment became dormant.

Second, Louis contends that the circuit court did not comply with the remand instructions from this court in its earlier decision by failing to consider evidence of Panos Trading's liquidity. Third, he argues that the circuit court erred in its calculation of postjudgment interest by failing to terminate such interest upon his alleged tender of payment to the Forrer Group in 2017. We address each argument in turn.

¶ 29                    *Dormancy and Revival of the Underlying Judgment*

¶ 30    Louis contends that the circuit court erred in refusing to dismiss the UFTA petition after learning that the judgment against Panos Trading became dormant. According to Louis, the dormancy of the underlying judgment eliminated all supplementary proceedings based on the judgment, including the UFTA petition. The Forrer Group responds, in part, that the dormancy of the Panos Trading judgment is "irrelevant," as the UFTA action is against Louis, not Panos Trading. The Forrer Group further contends that the circuit court correctly granted the petition to revive the underlying judgment, which mooted Louis's motion to dismiss based on dormancy. To the extent we are required to construe statutory language to resolve these issues, the applicable standard of review is *de novo*. *Midwest Sanitary Service, Inc. v. Sandberg, Phoenix & Von Gontard, P.C.*, 2022 IL 127327, ¶ 19; see also *Rosenthal-Collins Group, L.P. v. Reiff*, 321 Ill. App. 3d 683, 687 (2001) (providing that a *de novo* standard of review applies when the circuit court heard no testimony and ruled solely based on documentary evidence).

¶ 31    Section 2-1402 of the Code addresses citations to discover assets, which are also known as supplementary proceedings. 735 ILCS 5/2-1402 (West 2012). The statute "provides judgment creditors with a mechanism to initiate supplementary proceedings against a judgment debtor or third party in order to discover the judgment debtor's assets and apply them to satisfy the underlying judgment." *BMO Harris Bank N.A. v. Joe Contarino, Inc.*, 2017 IL App (2d) 160371,

9

¶ 30; see also *Kauffman v. Wrenn*, 2015 IL App (2d) 150285, ¶ 23 (noting that Illinois courts have construed section 2-1402 liberally to vest the circuit court with broad power to discover a debtor's assets and to apply the discovered property to satisfy a judgment).

¶ 32    Illinois Supreme Court Rule 277 sets forth the procedure for conducting supplementary proceedings. Ill. S. Ct. R. 277 (eff. Oct. 1, 2021). See *Kauffman*, 2015 IL App (2d) 150285, ¶ 24. Rule 277(a) provides, in part, that a supplementary proceeding authorized by section 2-1402 of the Code "may be commenced at any time with respect to a judgment *which is subject to enforcement*." (Emphasis added.) Ill. S. Ct. R. 277(a) (eff. Oct. 1, 2021). Relying on this language, Louis contends that, when the underlying judgment against Panos Trading became dormant in 2019, the Forrer Group lost their ability to enforce the judgment.

¶ 33    Section 12-108 of the Code generally provides that "no judgment shall be enforced after the expiration of 7 years from the time the same is rendered, except upon the revival of the same by a proceeding provided by Section 2-1601 of [the Code]." 735 ILCS 5/12-108 (West 2018). Section 2-1601[3] directs us to section 2-1602 of the Code, which provides, in part, that a dormant judgment may be revived at any time within 20 years after its entry by serving a petition to revive the judgment and entering a court order for revival as provided in the statute. 735 ILCS 5/2-1602(a) (West 2018).

¶ 34    In the instant case, the underlying judgment against Panos Trading became dormant under section 12-108 of the Code on April 5, 2019—seven years after the judgment—but was timely revived within the 20-year period set forth in section 2-1602. Louis advances several challenges to both the validity and effect of the revival, none of which we find to be availing.

---

[3]Section 2-1601 provides, in its entirety: "Scire facias abolished. Any relief which heretofore might have been obtained by scire facias may be had by employing a petition filed in the case in which the original judgment was entered in accordance with Section 2-1602." 735 ILCS 5/2-1601 (West 2018).

¶ 35    Louis contends that "[t]he only statutory exceptions to unenforceability by dormancy—a real estate levy or enforcement of a child support judgment (see 735 ILCS 5/12-108(a)), or an ongoing wage deduction (see 735 ILCS 5/12-108(a) and 735 ILCS 5/2-1602(h))—do not apply in the case at bar." Citing cases addressing the rule of statutory construction known as *expressio unius est exclusio alterius*, Louis asserts that the inclusion of the specific statutory exceptions for dormancy indicates that the legislature intended to exclude all other exceptions, *i.e.*, that dormancy requires the dismissal of all *other* enforcement actions. Simply put, we reject this contention. As noted above, section 12-108(a) states that "no judgment shall be enforced after the expiration of 7 years *** *except upon the revival of the same* by a proceeding provided by Section 2-1601." (Emphasis added.) 735 ILCS 5/12-108(a) (West 2018). As the statute unambiguously provides that a dormant judgment may be revived, we need not apply any canons of statutory construction. See *O'Connell v. County of Cook*, 2021 IL App (1st) 201031, ¶ 23.

¶ 36    The other cases cited by Louis are also unavailing. For example, in *Dominick*'s *Finer Foods, Inc. v. Makula*, 217 B.R. 550, 553-54 (N.D. Ill. 1997), *aff'd sub nom. In re Makula*, 172 F.3d 493 (7th Cir. 1999), the federal district court affirmed a bankruptcy court's determination that a citation to discover assets was unenforceable, as the enforcement of the judgment in the underlying lawsuit had been stayed at the time the alias citation was served. While we agree with the *Makula* district court that "a litigant may not begin supplementary proceedings under [section 2-1402] until the time when the judgment is enforceable" (*id.* at 553), the judgment against Panos Trading was enforceable at the time that the supplementary proceedings were initiated and the UFTA petition was filed. In *First National Bank of Marengo v. Loffelmacher*, 236 Ill. App. 3d 690, 695 (1992), the appellate court observed that a party may not enforce a judgment after the expiration of 7 years unless the judgment is revived within 20 years from the date the

judgment was originally rendered. As the judgment herein was timely revived within the 20-year period, the judgment was valid and enforceable.

¶ 37     Louis further contends that the notice of the revival petition was not properly served on Panos Trading and thus the judgment was never properly revived. See Ill. S. Ct. R. 105 (eff. Jan. 1, 2018); Ill. S. Ct. R. 106 (eff. Aug. 1, 1985). In the context of these proceedings, this argument is not compelling. Louis Panos was the manager and sole class A member of Panos Trading—an Illinois limited liability company that has long ceased its operations. Louis was undeniably aware of the dormancy (which he raised) and the revival (which he challenged). While we recognize that proper service of a petition to revive is important for preventing surprise on the party owing the dormant judgment (*Department of Public Aid ex rel. McGinnis v. McGinnis*, 268 Ill. App. 3d 123, 129 (1994)), such concern is not an issue here.

¶ 38     We are also unmoved by Louis's argument that the circuit court should have resolved his motion to dismiss the UFTA petition prior to resolving the Forrer Group's petition to revive the judgment. Illinois courts have the inherent power, independent of rule or statute, to manage their own dockets to dispose of cases in an orderly and expeditious manner. *J.S.A. v. M.H.*, 224 Ill. 2d 182, 196 (2007); see also *Nicholson v. Chicago Bar Ass'n*, 233 Ill. App. 3d 1040, 1045 (1992) (noting that an abuse of discretion standard applies to the review of the circuit court's exercise of authority to manage its own docket). Unlike in the cases cited by Louis, the circuit court's decision herein to contemporaneously address the revival and dismissal petitions was efficient and judicious within the context of these protracted proceedings. See, *e.g.*, *In re Dominique F.*, 145 Ill. 2d 311, 324 (1991) (stating that "[w]e cannot allow a trial judge to circumvent rules of law by postponing a decision on a change of venue petition until after he has ruled on the substantive issues in the case").

¶ 39    In summary, the authority cited by Louis neither explicitly states nor implicitly suggests that the dormancy and subsequent revival of the underlying judgment against Panos Trading invalidated the proceedings against Louis under the circumstances herein. See also *Liang v. Frontline Asset Strategies, LLC*, No. 15 C 09054, 2016 WL 7409913, at *3 (N.D. Ill. Dec. 22, 2016) (noting that "[t]he dormant dollar is still a dollar due"). We thus turn to the other contentions on appeal.

¶ 40                              *Scope of Remand*

¶ 41    Louis next contends that this court remanded the case to the circuit court for "further proceedings" to determine which transfers to avoid so as to satisfy the underlying judgment. According to Louis, "[t]o comply with that mandate, the lower court had to decide which transfers qualify as fraudulent and are legally capable of avoidance." He argues on appeal that the circuit court erred in following the remand instructions by failing to consider evidence of Panos Trading's liquidity at the time of the transfers as evidence of its solvency.

¶ 42    The elements of a cause of action under section 6(a) of the UFTA (740 ILCS 160/6(a) (West 2012)) are that (1) the creditor's claim arose before the transfer, (2) the debtor made the transfer without receiving reasonably equivalent value in exchange for the transferred property, and (3) the debtor was insolvent at the time of the transfer or became insolvent as a result of the transfer. *Falcon v. Thomas*, 258 Ill. App. 3d 900, 909 (1994). Louis's position in the prior appeal was that the LLC Act (not the UFTA) applied and that the "accounting book" value of Panos Trading should be used to determine insolvency. This court rejected Louis's position, noting that it is "well settled" that a UFTA "petitioner is not required to show accounting book insolvency and that for purposes of a UFTA claim[,] insolvency means a debtor has not retained sufficient assets after a transfer to discharge its obligations to its creditors." *Panos Trading*, 2017 IL App

(1st) 161460-U, ¶ 21.

¶ 43　In the instant appeal, Louis maintains that this court's prior decision instructed the circuit court to conduct further proceedings to determine which transfers should be avoided. According to Louis, such instructions required the circuit court to reexamine the issue of Panos Trading's insolvency, which in turn required an analysis of the firm's liquidity at the time of each transfer. As discussed below, his insolvency arguments are precluded by the "law of the case" doctrine.

¶ 44　The law of the case doctrine limits relitigation of a previously decided issue in the same case and encompasses not only the court's express decisions but also those issues decided by necessary implication. *Rommel v. Illinois State Toll Highway Authority*, 2013 IL App (2d) 120273, ¶ 15. We review *de novo* whether the law of the case doctrine applies. *Barnai v. Wal-Mart Stores, Inc.*, 2021 IL App (1st) 191306, ¶ 48.

¶ 45　Finding the law of the case doctrine applicable, the circuit court observed—and we agree—that this court's "narrow instructions" on remand were limited to the issue of which transfers "should be avoided" and reversed. Even assuming *arguendo* that the circuit court's remand directive was "general and unspecific," as is argued by Louis, then the circuit court in the instant case was required on remand to examine the contents of this court's prior decision and determine what further proceedings would be consistent with the decision. See, *e.g.*, *McDonald v. Lipov*, 2014 IL App (2d) 130401, ¶ 44. In its prior decision, this court stated: "It is clear from the record that the [circuit court] determined the firm rendered itself insolvent for purposes of the section 6(a) UFTA claim, that the court rejected all of the counterarguments, and that the court granted judgment on the [Forrer Group's] petition." *Panos Trading*, 2017 IL App (1st) 161460-U, ¶ 27. This court then expressly affirmed the judgment in all respects, with the sole exception of the $350,000 transfer to Callahan. *Id.* ¶¶ 30, 31.

¶ 46    Based on our review of the Rule 23 order, this court did not intend for the circuit court to conduct any reexamination of the appropriate insolvency standard on remand. While we recognize that a reviewing court may revisit an issue where the facts have changed or where the initial decision was clearly erroneous and would work a manifest injustice (see *Barnai*, 2021 IL App (1st) 191306, ¶ 48), such factors are inapplicable here. We thus turn to the final issue.

¶ 47                            *Postjudgment Interest*

¶ 48    Louis's final contention is that the circuit court erred in its calculation of postjudgment interest by failing to terminate such interest when the Forrer Group "refused" his tender of payment in 2017. Section 2-1303 of the Code generally provides that judgments "shall draw interest at the rate of 9% per annum from the date of the judgment until satisfied." 735 ILCS 5/2-1303(a) (West 2020). The statute further provides that a "judgment debtor may by tender of payment of judgment, costs and interest accrued to the date of tender, stop the further accrual of interest on such judgment." *Id.*

¶ 49    A tender generally must include everything to which the creditor is entitled, and "a tender of any less sum is nugatory and ineffective as a tender." *Smith v. Gen Co.*, 11 Ill. App. 3d 106, 109 (1973). Accord *Niemeyer v. Wendy's International, Inc.*, 336 Ill. App. 3d 112, 115 (2002). It is also well settled that a tender under section 2-1303 must be an unconditional offer to pay. *Jacobs v. Yellow Cab Affiliation, Inc.*, 2020 IL App (1st) 182462, ¶ 28. Based on the appellate record, there is no clear indication that Louis made an unconditional offer or that he offered the full amount due on the judgment from Panos Trading or the part of the judgment that was due from him. Rather, the record suggests that Louis's offer was conditioned on a full release and that the offered amount was significantly less than the amount he owed to the Forrer Group if the $350,000 transfer to Callahan was found to be irreversible (as it eventually was). We thus reject

Louis's challenge to the award of postjudgment interest.

¶ 50                                    CONCLUSION

¶ 51     For the reasons discussed herein, the judgment of the circuit court of Cook County is

affirmed in its entirety.

¶ 52     Affirmed.

*Panos Trading LLC v. Forrer*, **2023 IL App (1st) 220451**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 11-CH-42915; the Hon. Patrick J. Heneghan, Judge, presiding. |
| **Attorneys for Appellant:** | Andrew R. Schwartz, of Schwartz & Kanyock, LLC, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Charles J. Risch and Katelyn M. Hodgman, of Lawrence Kamin LLC, of Chicago, for appellees. |