JUNE E. HALLORAN, Ex'x of the Estate of John W. Halloran, Deceased, Plaintiff-Appellee, v. JAMES A. DICKERSON *et al.*, Defendants (Union Automobile Insurance Company, Intervenor-Appellant).

Fifth District   No. 5—96—0410

Opinion filed April 9, 1997.

Karen L. Kendall and Gary D. Nelson, both of Heyl, Royster, Voelker & Allen, of Peoria, and Robert H. Shultz, Jr., of Edwardsville, for appellant.

Anne C. Juhasz and Keith A. Jensen, both of Callis, Papa, Jensen, Jackstadt & Halloran, P.C., of Granite City, for appellee.

JUSTICE MAAG delivered the opinion of the court:

On July 27, 1993, John Halloran was involved in an automobile accident with another vehicle operated by James Dickerson. The owner of the vehicle being operated by Dickerson was Debra Roberson. John Halloran died the following day of injuries suffered in the accident. June Halloran was appointed executrix of the estate of John Halloran, and she commenced an action against Dickerson premised on alleged negligence and wilful and wanton conduct. In a separate count, Roberson was sued on a negligent entrustment theory.

The defendants were insured under a policy of insurance issued by Union Automobile Insurance Company (Union). The bodily injury limit applicable to each person injured or killed was $25,000. Union assumed the defense of Dickerson and Roberson pursuant to the defense provisions of its policy. On June 22, 1995, a jury returned a verdict in favor of Halloran in the amount of $2.5 million. Judgment was entered on the verdict the same day.

In addition to the $25,000-per-person bodily injury limits, the policy provided:

> "Supplementary Payments
> In addition to our limit of liability, we will pay on behalf of an 'insured':

* * *

3. Interest accruing after a judgment is entered in any suit we defend. Our duty to pay interest ends when we offer to pay that part of the judgment which does not exceed our limit of liability for this coverage."

On July 31, 1995, Union mailed a check for $49,041.16 to the Madison County circuit clerk's office to be placed in an escrow account and *held by the clerk* "until such time as there is a final resolution" of the case. Receipt by the clerk was logged as occurring at 11:57 a.m., August 1, 1995. The check represented what Union believed to be the accrued interest to July 31, 1995 ($24,041.16), along with the $25,000 policy limits. In August 1995, counsel for plaintiff requested the circuit clerk to release the funds from the account to plaintiff. However, when the court approved disbursement of the funds to plaintiff, Union objected. Union faxed a letter to the clerk stating that post-trial motions were pending and that the money was not to be released until a final resolution of the case had occurred. The court then vacated its order to disburse the funds. On September 13, 1995, plaintiff mailed to Union's vice-president of claims a list of claimed taxable costs. The total costs claimed amounted to $1,991.60. On April 30, 1996, Union paid the plaintiff $1,991.60, which it designated as payment of court costs.

On September 15, 1995, plaintiffs filed a "Motion to Disburse Funds." The motion recited that a request had been made to release the funds deposited with the clerk, and it asserted that due to Union's objection no disbursement was ordered. It further asserted that the tender to the clerk was improper and invalid and that in any event the interest amount as computed by Union was deficient. The prayer for relief requested the "court to disburse the funds deposited by Union Insurance Group in this case and to compel payment of all further accrued interest up to the date of valid tender."

On October 6, 1995, following discussions between the parties, it was agreed to suspend the accrual of interest as of that date. The precise terms of the agreement are discussed later in this decision. However, as part of this agreement, Union agreed that no hearing would be necessary on that part of plaintiff's September 15, 1995, motion which sought disbursal of the funds.

Plaintiff finally gained control of the $49,041.16, less a $1,226.03 handling fee (2.5% of the funds held) assessed by the clerk's office, on December 6, 1995. The fee was charged by the clerk pursuant to section 27.1a(bb)(1) of the Clerk of Courts Act (705 ILCS 105/27.1a(bb)(1) (West 1992)).

On April 10, 1996, plaintiff informed Union that its October agreement to stop the accrual of interest was terminated.

On April 26, 1996, a hearing was held on that part of plaintiff's September 15, 1995, motion which sought a court determination as to the amount of interest owed. The court in an order dated May 9, 1996, ruled as follows:

"ORDER

Cause comes on for hearing on Plaintiff's Motion to Disburse Funds. After hearing argument of counsel, the Court finds:

1. Judgment was rendered in the amount of $2,500,000.00 on June 22, 1995;

2. Interest runs at a rate of 9% per annum on said judgment, or $616.44 per diem;

3. On July 31, 1995, Union Automobile Insurance Company sent a check pursuant to its contract with its insured for $49,041.16 to the office of the Circuit Clerk of Madison County, which sum represented the policy limit of $25,000.00 plus $24,041.16 in accrued interest to that date.

4. The court ordered disbursement of the Clerk's fund on August 16, 1995, but Union Insurance objected to this disbursal. The Court then vacated the order to disburse until Union Insurance agreed to disbursement.

5. The Plaintiff was not given access to or control over these funds and, therefore, the Court finds that no valid tender was effected to plaintiff.

6. The Circuit Clerk's office deducted $1,226.03, or $2^{1}/2\%$, as a handling fee.

7. The defendant failed to pay costs of $1,991.60 until Tuesday, April 30, 1996.

8. On October 6, 1995, plaintiff's counsel agreed with defense counsel, Robert Schultz, to suspend the further accrual of interest as settlement negotiations were beginning.

9. Accrued interest to that date totalled $65,959.08.

10. On December 6, 1995, plaintiff was first given access to and control over the $49,041.16 deposited by defendant with the Madison County Circuit Clerk.

11. At that point, the judgment was reduced by $25,000.00, to $2,475,000.00,; the accrued interest reduced to $41,917.92; with taxable costs of $1,991.60 outstanding and payable by the defendant.

12. On April 10, 1996, plaintiff sent a letter to defense counsel, Robert Schultz, indicating that, due to an apparent lack of interest in settlement negotiations on the part of the defendant, the agreement to stop the further accrual of interest was terminated and that interest was again running.

13. The interest on the modified judgment amount of $2,475,000.00 at 9% per annum totals $610.27 per diem.

THE COURT HOLDS that plaintiff is entitled to collect accrued interest from Union Automobile Insurance Company in the amount of $52,292.58, with said amount representing interest accrued to April 26, 1996. Plaintiff is further entitled to interest at a rate of $610.27 per day until paid in full. Defendant is ordered to reimburse plaintiff $1,226.03 as and for fees withheld by the Circuit Clerk's office.

SO ORDERED"

On appeal, Union contends:

(1) Payment of the funds to the circuit clerk constituted sufficient tender of the funds so as to relieve Union of further liability for interest;

(2) The circuit clerk's fee deduction did not affect the sufficiency of Union's tender;

(3) Plaintiff's failure to object to Union's payment of the funds to the court waives any objections regarding the mode of tender;

(4) Other jurisdictions impose a less stringent standard for determining an insurer's compliance with the terms of its policy;

(5) Public policy demands that no further interest be found due; and

(6) The October 6, 1995, agreement of the parties to stop the accrual of interest precludes the award of any interest beyond that point.

■ Illinois law provides for a statutorily mandated accrual of interest on judgments. 735 ILCS 5/2—1303 (West 1992). Specifically, section 2—1303 of the Code of Civil Procedure (Code) provides:

"Judgments recovered in any court shall draw interest at the rate of 9% per annum from the date of the judgment until satisfied ***. When judgment is entered upon any award, report or verdict, interest shall be computed at the above rate, from the time when made or rendered to the time of entering judgment on the same, and included in the judgment. Interest shall be computed and charged only on the unsatisfied portion of the judgment as it exists from time to time. The judgment debtor may[,] by tender of payment of judgment, costs and interest accrued to the date of tender, stop the further accrual of interest on such judgment notwithstanding the prosecution of an appeal, or other steps to reverse, vacate or modify the judgment." 735 ILCS 5/2—1303 (West 1992).

Nothing less than full, formal tender in compliance with the statute will operate to stop the accrual of interest on the judgment. *Thomas v. Missouri-Illinois R.R. Co.*, 30 Ill. App. 3d 40, 42, 332 N.E.2d 139, 141 (1975).

■ An inquiry essential to this analysis is a determination of

what makes up the "judgment" that interest accrues upon. Illinois law has long held that all recoverable costs are to be added to the verdict amount when computing the amount of the judgment for purposes of interest computation. *Blakeslee's Storage Warehouses, Inc. v. City of Chicago*, 369 Ill. 480, 484, 17 N.E.2d 1, 3 (1938); *Robinson v. Robinson*, 140 Ill. App. 3d 610, 611, 488 N.E.2d 1349, 1351 (1986) ("[W]e note that a judgment for costs is as much the judgment of the court as the damages awarded and that interest may therefore be awarded upon the judgment for costs"). In addition, interest begins running on the verdict amount from the date of the verdict. *Illinois State Toll Highway Authority v. Heritage Standard Bank & Trust Co.*, 157 Ill. 2d 282, 301, 626 N.E.2d 213, 223 (1993). Any interest accruing between the date the verdict is returned and the date the judgment is entered is added to the judgment amount for purposes of computing interest on the judgment. 735 ILCS 5/2—1303 (West 1992). The "judgment" when entered is therefore made up of the verdict amount, plus costs, plus accrued interest from the date of verdict to the date judgment is entered.

■ The legislature has also given us guidelines to follow for the computation of time. Section 1.11 of the Statute on Statutes provides:

"The time within which any act provided by law is to be done shall be computed by excluding the first day and including the last, unless the last day is Saturday or Sunday or is a holiday as defined or fixed in any statute now or hereafter in force in this state, and then it shall also be excluded. If the day succeeding such Saturday, Sunday or holiday is also a holiday or a Saturday or Sunday then such succeeding day shall also be excluded." 5 ILCS 70/1.11 (West 1992).

Here, the verdict was rendered on June 22, 1995, and judgment was entered the same day. Under our time computation statute we therefore exclude the day of the event (here, the verdict and judgment) and commence counting days with June 23, 1995.

■ We next turn to the proper method for calculating the amount of interest accruing. Illinois law provides:

"In all computations of time, and of interest and discounts, a month shall be considered to mean a calendar month, and a year shall consist of twelve calendar months; and in computations of interest or discount for any number of days less than a month, a day shall be considered a thirtieth part of a month, and interest or discount shall be computed for such fractional parts of a month upon the ration which such number of days shall bear to thirty." 815 ILCS 205/10 (West 1992).

■ It is well established in Illinois that this accrual of interest is simple interest and not compound interest. *Blakeslee's Storage*

*Warehouses, Inc. v. City of Chicago*, 369 Ill. 480, 482, 17 N.E.2d 1, 2 (1938); *Braden v. Weinert*, 97 Ill. App. 3d 929, 938, 423 N.E.2d 1326, 1333 (1981). But note, as stated previously, that section 2—1303 of the Code provides that interest begins to run from the date of the verdict. The statute further states that interest accruing between the date of the verdict and the date judgment is entered is to be added to the judgment. Therefore, when computing interest on the judgment, part of that judgment amount earning interest *could* be interest that accrued between verdict and judgment.

■ Finally, a partial payment of the total amount owed is credited by applying the payment first to the accrued postjudgment interest, and only after all interest has been paid does the judgment amount begin to be reduced by any payments made. *Scales v. McMahon*, 364 Ill. 413, 420, 4 N.E.2d 872, 875 (1936); *Heartt v. Rhodes*, 66 Ill. 351, 357 (1872).

In this case, we must apply these rules in light of the insurance policy provisions in question. In the usual case, the debtor's liability to pay interest would continue until all interest and the total judgment were paid in full. Because Union's liability is limited under its policy to $25,000 on the underlying judgment, along with all interest on the total judgment until its underlying $25,000 limits are paid, we must determine first the extent to which the payments made by Union have satisfied the accrued interest. Only after all accrued interest is paid does the $25,000 bodily injury coverage liability begin to be reduced.

When applied to the case at bar, our calculations are:

*Calculations*

$2,500,000 verdict + $1,991.60 costs = $2,501,991.60 (total judgment)

$2,501,991.60 (judgment) x 9% interest/year = $225,179.24 interest accruing/year.

$225,179.24 (interest accruing/year) 12 months/year = $18,764.94 interest accruing/month.

$18,764.94 interest accrued/month 30-day month called for by statute = $625.50 interest accruing/day.

It is important to remember that a daily rate of interest is only used for periods less than a full calendar month. Thus, on July 31, 1995, when Union mailed the funds to the clerk, one full calendar month and eight individual days had elapsed. On August 1, 1995, when the funds were received by the clerk, one full calendar month and nine individual days had elapsed. On October 6, 1995, three full calendar months and 14 individual days had elapsed. Accordingly, on July 31, 1995, when Union mailed $49,041.16 to the circuit clerk,

there was actually due and owing, to satisfy the coverage provided by the policy, $48,768.94 ($25,000 policy limits plus $23,768.94 accrued interest). On August 1, 1995, when the clerk *received* the funds, there was actually due and owing, to satisfy the coverage provided, $49,394.44 ($25,000 policy limits plus $24,394.44 accrued interest). On October 6, 1995, when it was agreed to suspend the accrual of interest, $90,051.82 was owed ($25,000 policy limits plus $65,051.82 accrued interest).

■ Tender is an "unconditional offer to perform coupled with manifested ability to carry out the offer and production of subject matter of tender." Black's Law Dictionary 1315 (5th ed. 1979). A tender will not stop the accrual of interest unless it is made unconditionally. *Steward v. Yoder*, 86 Ill. App. 3d 223, 225, 408 N.E.2d 55, 57 (1980). "A tender does not stop the running of interest *** unless the debtor tenders the full amount due and keeps it at all times ready to be paid and subject to the order of the creditor at any time when he shall comply with whatever agreement there is between the parties so as to be authorized to receive it. A mere offer to tender which on the date made could have no effect on the use of the money by the parties[] could not act as a bar to the accrual of interest from that date." 23 Ill. L. & Prac. *Interest* § 45, at 48 (1979).

The rationale behind the statute (735 ILCS 5/2—1303 (West 1992)) is an intention to make the judgment creditor "whole," by requiring the judgment debtor to give up the use of the money and thereby allow the creditor to use the funds to earn interest if he so chooses while the matter is pending. *Thomas v. Missouri-Illinois R.R. Co.*, 30 Ill. App. 3d at 41, 332 N.E.2d at 140.

■ Here, proper tender was not made when Union mailed the $49,041.16 to the circuit clerk. Section 2—1303 makes no mention of the circuit clerk as a proper person to receive the funds. There was no agreement between the parties for Union's initial deposit of the funds into the circuit clerk's account. Tender to the clerk was improper.

Union urges us to consider the fact that it had given up control of the funds as dispositive proof that the tender was legally sufficient. However, we are not persuaded by this argument. The reasoning behind the process of tender by the judgment debtor is not simply to compel the debtor to relinquish control over the funds by placing the money in the hands of a third party; rather, the significance of the act of tender is to give the money to the judgment creditor so that he has the opportunity to earn interest and thus be "made whole." The mere fact that Union gave up some degree of control over the funds does not constitute sufficient tender to plaintiff. Plaintiff had no ac-

cess to the funds, and the clerk was directed by Union to hold the funds until the case was resolved.

Moreover, Union's tender was not unconditional and therefore was not sufficient legal tender.

The record indicates that when plaintiff initially succeeded in getting a court order to disburse the funds, Union objected. This ultimately led to the withdrawal of the court's disbursal order. Any resistance by Union to disbursal of the money to plaintiff suggests that Union's tender was less than unconditional.

The simple fact that the funds were given to the clerk required the plaintiff to obtain a court order for disbursal, further clouding Union's purported tender. We conclude that because plaintiff had no access to the deposited funds and could not thereby be made whole, Union's tender to the circuit clerk was not sufficient to stop the accrual of interest on the judgment.

Assuming that Union's tender of the money to the circuit clerk was proper in all other respects, we find that the amount tendered was rendered inadequate by the subtraction of the clerk's statutory handling fee.

Plaintiff eventually gained access to the deposited funds on December 6, 1995. As the record indicates, the circuit clerk, upon releasing the deposited funds to the plaintiff pursuant to court order in December 1995, levied a standard 2.5% handling fee on the funds, amounting to $1,226.03. See 705 ILCS 105/27.1a(bb)(1) (West 1992). Thus, plaintiff was only given access to $47,815.13. Union argues that it had no notice of the handling fee and, therefore, it should not be held responsible for the shortfall. We disagree. Union is charged with knowledge of the law. *Somerset Importers, Ltd. v. Gold Standard Liquors, Inc.*, 18 Ill. App. 3d 39, 42, 309 N.E.2d 286, 289 (1974). The statutory fee was no secret. Even though the plaintiff received part of the funds in December 1995, the tender was not full and accordingly plaintiff was not made whole. " 'A valid tender by the debtor must be "sufficient to cover all that the creditor then has a right to recover whether of debt, interest or costs. If he tender[s] less, then the tender is not good ***." ' " *Pinkstaff v. Pennsylvania R.R. Co.*, 31 Ill. 2d 518, 526, 202 N.E.2d 512, 516 (1964), quoting *River Valley Cartage Co. v. Hawkeye-Security Insurance Co.*, 17 Ill. 2d 242, 246, 161 N.E.2d 101, 104 (1959), quoting *Sweetland v. Tuthill*, 54 Ill. 215, 216 (1870). Plaintiff's statutory entitlement to be made whole by the tender of the "judgment" as herein defined plus interest must not be hindered by Union's unilateral decision to deposit the funds with a third party whose fee was in essence taken out of plaintiff's pocket.

To summarize, (1) Union's purported tender was made to the

wrong person; (2) it was an insufficient amount; (3) it was rendered even more insufficient by the deduction of the clerk's fee; (4) it was not unconditional; and (5) and when payment was finally made to the plaintiff, it did not even satisfy the accrued interest.

■ Union contends that plaintiff waived any argument regarding the mode of tender by not objecting to the deposit with the circuit clerk. We find that this position lacks merit. It was Union that chose to make the deposit with the clerk without consulting plaintiff. Thus, plaintiff did not waive its tender argument.

We also find Union's arguments regarding public policy and the law of other jurisdictions to be unpersuasive. Our statutes are clear and precise. Our public policy is found in our constitution, statutes, and judicial decisions. *Rome v. Upton*, 271 Ill. App. 3d 517, 520, 648 N.E.2d 1085, 1088 (1995). It is Union that ignored these statutes and judicial decisions.

Finally, Union argues that even if interest continued to accrue on the judgment after the funds were deposited with the circuit clerk's office, an agreement between the parties stopped the accrual of interest as of October 6, 1995.

Union cites its letter to plaintiff on October 6, 1995, and plaintiff's letter on November 9, 1995, as memorializing an agreement between the parties to release the deposited funds to plaintiff and toll the accrual of interest as of October 6, 1995.

In its October 6, 1995, letter to plaintiff, Union stated that it would not object to the disbursement of the funds to plaintiff and that no hearing would therefore be necessary on plaintiff's motion to disburse funds. Union also continued to assert that interest stopped accruing on July 31, 1995, when it tendered the funds to the circuit clerk.

Plaintiff, in its November 9, 1995, letter, noted that Union had agreed to release the funds and that plaintiff agreed that its "demand for additional interest would terminate on [October 6, 1995,] so that the interest on the judgment didn't go on *until the motion was finally heard.*" (Emphasis added.) Plaintiff further argued that Union owed plaintiff additional interest which accrued up to October 6, 1995.

The construction of a contract is a question of law which we review *de novo. Ford v. Dovenmuehle Mortgage, Inc.*, 273 Ill. App. 3d 240, 245, 651 N.E.2d 751, 755 (1995); *Whiting v. Prestige Casualty Co.*, 238 Ill. App. 3d 376, 377, 606 N.E.2d 397, 399 (1992). In determining what effect, if any, this agreement has on the accrual of interest on the judgment, we must consider the terms of the bargain, the enforceability of the agreement, and whether the agreement was breached.

■ A contract, to be valid, must contain offer, acceptance, and

consideration; to be enforceable, the agreement must also be sufficiently definite so that its terms are reasonably certain and able to be determined. *Ogle v. Hotto*, 273 Ill. App. 3d 313, 319, 652 N.E.2d 815, 819 (1995). A contract is sufficiently definite and certain to be enforceable if the court is able from its terms and provisions to ascertain what the parties intended, under proper rules of construction and applicable principles of equity. *Midland Hotel Corp. v. Reuben H. Donnelley Corp.*, 118 Ill. 2d 306, 314, 515 N.E.2d 61, 65 (1987). A contract may be enforced even though some contract terms may be missing or left to be agreed upon, but if essential terms are so uncertain that there is no basis for deciding whether the agreement has been kept or broken, there is no contract. *Academy Chicago Publishers v. Cheever*, 144 Ill. 2d 24, 30, 578 N.E.2d 981, 984 (1991).

■ The terms of the agreement at issue are ascertainable. The parties agreed to suspend the accrual of interest as of October 6, 1995, because settlement was being discussed. Plaintiff's letter indicated that the parties intended the interest to be tolled from October 6, 1995, until the hearing on the motion for adjusting interest. Had settlement occurred, then no hearing would have taken place and no more interest would have accrued. Because the case was not settled, the hearing took place on April 26, 1996. Although plaintiff purported to terminate the agreement and thereby revive the accrual of interest on April 10, 1996, we consider this to be in derogation of the agreement.

Assuming that the two letters in the record constitute a single agreement between the parties, we further find consideration by both parties to be sufficient. Plaintiff clearly gave consideration in that it agreed to suspend the accrual of interest on the judgment. Defendant's consideration appears to have been its consent to the release of the funds from the circuit clerk's office to plaintiff without any further resistance and accordingly agreeing to cancel a scheduled hearing on plaintiff's motion to disburse.

Viewing the instant bargain as a valid and enforceable agreement, we conclude that plaintiff's unilateral attempt on April 10, 1996, to repudiate the agreement was ineffective. Plaintiff was bound to the agreement it had made and for which Union had already exhibited its forbearance. Plaintiff therefore was obliged to honor its agreement until the hearing on the motion to adjust interest. That hearing occurred April 26, 1996. Interest commenced running again on that date under the terms of the earlier referenced agreement.

Although plaintiff gained access to part of the $49,041.16 deposited with the circuit clerk in December 1995, that amount was not sufficient to reduce the amount of the principal judgment owed.

As we previously held, as of October 6, 1995, there was $25,000 due under the policy's bodily injury coverage and $65,051.82 in interest had accrued on the judgment. The December 1995 release of the funds deposited, less the clerk's fee, did not even satisfy the interest that had accrued up to October 6, 1995. It merely reduced the accrued interest due and owing from $65,051.82 to $17,236.69 ($65,051.82 minus $47,815.13 = $17,236.69). Again, a partial payment of a debt is to be applied first to interest owed, with the balance, if any, applied toward the principal. *Scales*, 364 Ill. 413, 4 N.E.2d 872; *Heartt*, 66 Ill. 351. This means that, as of the December 1995 release of funds, Union owed $42,236.69 ($25,000 bodily liability coverage plus $17,236.69 unpaid accrued interest = $42,236.69).

▮ Between April 26, 1996, and April 30, 1996, when Union purported to pay the costs in the amount of $1,991.60, additional interest accrued on the judgment. While Union claimed the payment was for costs, costs are part of the judgment and the judgment does not begin to be reduced until *all* interest is paid. Therefore, the $1,991.60 payment merely reduced the interest owed. The $25,000 bodily injury coverage has never been reduced, nor has the underlying judgment in the amount of $2,501,991.60. Interest has continued to accrue to this day.

▮ For the sake of clarity, we will now set forth the proper method for judgment debtors to stop the accrual of interest on a judgment.

Step 1: Determine the amount awarded by the court or jury as damages and add to it plaintiff's court costs. *Blakeslee's Storage Warehouses, Inc. v. City of Chicago*, 369 Ill. 480, 484, 17 N.E.2d 1, 3 (1938); *Robinson v. Robinson*, 140 Ill. App. 3d 610, 611, 488 N.E.2d 1349, 1351 (1986). Also, add to the verdict and court costs any interest that accrues between the date of the verdict and the date judgment is entered on the verdict. 735 ILCS 5/2—1303 (West 1992). This is the full amount of judgment upon which interest will accrue.

Step 2: Apply section 1.11 of the Statute on Statutes (5 ILCS 70/1.11 (West 1992)) to determine the starting and ending date of accrual.

Step 3: Determine first the amount of interest accruing per year by multiplying the amount of judgment by the applicable annual rate of interest to arrive at the amount of interest per year; divide the amount of interest per year by 12 to arrive at the amount of interest accruing per calendar month; divide the amount of interest accruing per calendar month by 30 to arrive at the amount of interest accruing per day for any period less than one full calendar month. 815 ILCS 205/10 (West 1992).

Step 4: Partial payments apply first to the interest owed. Only after all the interest is paid in full will the judgment principal amount be reduced. *Scales v. McMahon*, 364 Ill. 413, 420, 4 N.E.2d 827, 875 (1936); *Heartt v. Rhodes*, 66 Ill. 351, 357 (1872). If the amount of the underlying judgment is reduced, then the amount of interest accruing will be reduced accordingly.

## *Example*

Assume that a verdict together with court costs equals $10,000. The verdict is rendered and judgment is entered on June 30, 1995. To determine the amount of interest that would be owed on August 7, 1996, the following method applies.

(1) On June 30, 1996, one full year had elapsed. At 9% simple interest, $900 in interest had accrued.

(2) Next, to determine the interest that accrued in July 1996, divide $900 by 12 (months). This means that $75 in interest accrued in July.

(3) Next, divide $75 by 30 (days). This equals $2.50 interest per day. Therefore, for the seven days in August 1996, $17.50 in interest would accrue.

(4) Add together the $900 (interest for one year) and the $75 (interest for one month) and the $17.50 (interest for seven days). This equals $992.50 interest owed on August 7, 1996.

Based on the foregoing, we reverse the order of the circuit court entered on May 9, 1996, and remand this matter for the court to determine the amount owed to the plaintiff by Union.

Reversed and remanded with directions.

CHAPMAN and GOLDENHERSH, JJ., concur.