NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 200187-U

NO. 4-20-0187

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 13, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| MARIE PATTON, | ) | Appeal from the |
|     Plaintiff-Appellant, | ) | Circuit Court of |
|       v. | ) | Sangamon County |
| CHRISTIAN BISWELL, | ) | No. 15L252 |
|     Defendant-Appellee. | ) | |
| | ) | |
| | ) | |
| | ) | Honorable |
| | ) | Adam Giganti, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Harris and Holder White concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed in part and reversed in part, finding the trial court had jurisdiction to hear defendant's motion for declaratory relief; the trial court did not err in denying plaintiff's petition to substitute the judge for cause; but the trial court did err in declaring defendant fully satisfied the judgment without paying the accrued $808.76 in statutory postjudgment interest.

¶ 2    Days after a jury awarded plaintiff Marie Patton $820,000 in damages in her personal injury suit against defendant Christian Biswell, defense counsel informed plaintiff's counsel that the insurance company authorized him to pay the judgment and costs. Plaintiff's counsel accepted the offer. Defense counsel transmitted a check for $820,243, but plaintiff rejected the check because it contained the lienholder's name. Plaintiff neither refused defendant's offer to pay nor rejected his check because it did not contain postjudgment interest. Counsel meanwhile allowed the situation to devolve into threatened actions and accusations of

pettiness, and each involved the trial court by filing various motions. As is relevant here, defendant filed a "Motion for Declaratory Relief," asking the trial court to find defendant satisfied the judgment when he paid the offered judgment and costs. Following a hearing where it took the matter under advisement, the trial court issued an order declaring "that the judgment previously entered herein was and is satisfied in full effective on and after December 17, 2019." The trial court denied all other pending motions, except for plaintiff's "Motion to Dissolve/Vacate Injunction *Nun* [*sic*] *Pro Tunc*," which the court granted.

¶ 3        On appeal, plaintiff presents three arguments challenging the trial court's order: (1) the trial court erred in denying her statutory right to postjudgment interest on the jury's verdict, (2) the trial court lacked jurisdiction to consider the "Motion for Declaratory Relief," and (3) the trial court erred in denying plaintiff's "Petition to Substitute for Cause." We affirm in part, reverse in part, and remand with directions.

¶ 4                                    I. BACKGROUND

¶ 5        This case began nearly eight years ago, when Biswell rear-ended Patton, causing her injuries and setting in motion the underlying litigation. The case eventually proceeded to trial, where, on December 12, 2019, the jury returned a verdict in Patton's favor, awarding her $820,000 in damages. The trial court entered the judgment the same day. Five days later, on December 17, 2019, defense counsel emailed plaintiff's counsel to inform him that defendant's insurance carrier authorized him to pay "the judgment ($820,000.00) and costs ($243.00) to you and your client in consideration of the jury's verdict," labeling the forthcoming check a "settlement draft." Plaintiff's counsel accepted in an e-mail the next day, saying, "Mrs. Patton accepts," and asking defense counsel to make the draft payable to "Marie Patton and The Unsell Law Firm, P.C."

¶ 6            On December 26, 2019, defense counsel remitted a draft totaling "$820,243.00

paid in satisfaction of the jury's verdict returned on December 12, 2019," and made the check

payable to "The Unsell Law Firm PC & Wadena Insurance Company & Marie Patton & Trover

Solutions Inc." Defense counsel's letter requested a signed "Satisfaction" and cautioned against

plaintiff's counsel negotiating the check until he returned the signed satisfaction form. The next

day, plaintiff's counsel rejected the draft, saying, "that is not how I instructed you to draft the

check." Besides charging defense counsel with "just being petty," plaintiff's counsel gave no

other reason for rejecting the check. Plaintiff's counsel did not broach postjudgment interest and

had not mentioned it at all since the jury verdict. Plaintiff's response prompted several

communications between the parties on December 27, 2019.

¶ 7            Defense counsel relayed his belief he had to include the lienholder on the draft

and could not take plaintiff's counsel's verbal assurance to indemnify the defendant or the

insurance company. A new plaintiff's counsel entered the fray, reiterating plaintiff's rejection of

the settlement draft and restating plaintiff's willingness to indemnify defendant, defense counsel,

and the insurance company against all liens in the case. Plaintiff's counsel threatened: "If you

would like to gamble with the 9% interest regarding your belief this does not qualify as a

settlement, then so be it." This is the first time any of the attorneys representing plaintiff

mentioned postjudgment interest.

¶ 8            On January 3, 2020, plaintiff's counsel sent another letter to defense counsel,

returning the check for $820,243. The letter read:

              "Per our prior conversations, we are not accepting the

              enclosed check as it is incorrectly made out. As per the enclosed

              letter, please issue a corrected check only made payable to 'The

Unsell Law Firm, P.C. and Marie Patton' as we have indemnified

you of all liens."

On January 14, 2020, defendant filed a "Motion for Declaratory Relief," asking the trial court for a "declaration that the Defendant has fully and completely satisfied its obligation in respect to the third-party's right of recovery or subrogation interest in the judgment previously entered" and "[t]his Defendant has therefore performed all acts and done all things required of it in order to secure the satisfaction of the judgment as previously entered." Plaintiff countered with a "Motion for Enforcement of Settlement or Judgment," noting that defendant owed her "$820,000, $808.72 in interest, and the costs of the suit," when she "accepted the offer to settle." Plaintiff requested the trial court order defendant to fulfill the settlement by paying her the judgment plus interest and costs.

¶ 9    Over the next several weeks, the parties filed various motions in the trial court. Though defendant mailed a check to plaintiff's counsel for the judgment and costs (there had been no demand for postjudgment interest yet), plaintiff filed citations to discover defendant's assets and garnish his wages, even contacting defendant's employer to warn him about plaintiff's collection efforts. On January 27, 2020, the trial court issued an injunction "restrain[ing] and enjoin[ing] the Plaintiff from further pursuing the collection of the judgment previously entered herein by way of citation to discover assets and/or wage garnishment or non-wage garnishment or by any other means without further order of the court."

¶ 10    On January 29, 2020, plaintiff's counsel informed the defense and the trial court that plaintiff satisfied the lienholder's interest in this matter. Defense counsel then issued a new check for $820,243, dated January 31, 2020, payable to only "The Unsell Law Firm PC & Marie Patton." Despite this apparent resolution, the parties kept filing motions in the trial court.

¶ 11        On February 7, 2020, plaintiff filed a "Petition to Substitute for Cause," outlining instances where Judge Giganti allegedly displayed bias toward plaintiff and her counsel. The petition, however, did not contain claims where Judge Giganti's alleged bias actually prejudiced her case. Defendant responded by moving to strike plaintiff's petition as "untimely and improper, and is otherwise neither well-grounded in fact nor warranted by existing law *** and it is interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation."

¶ 12        On February 10, 2020, the trial court held a scheduled hearing for the various pending motions. After dispensing with a few ministerial matters, Judge Giganti stated: "So with all that now taken care of, there are numerous motions and petitions and pleadings before the court today. But the most recently filed, I believe, *** is a certain petition for substitution for cause filed by the plaintiff and with that filing I am now going to refer this case to Judge Madonia for either reassignment or he may keep it himself to review and make a decision concerning that petition for substitution for cause." Later that day, the parties appeared before Judge John M. Madonia, presiding judge of Sangamon County, for consideration of plaintiff's petition to substitute Judge Giganti for cause. The trial court noted the parties "requested an expeditious ruling on the petition[ ]," and so it took time to review the relevant materials and case law. Plaintiff's counsel argued the various incidents alleged in the petition "show[ed] a pattern of bias." Counsel devoted most of the argument to an instance when the court held an emergency, *ex parte* hearing on defendant's petition for injunctive relief. Judge Madonia eventually denied plaintiff's petition, finding plaintiff failed to prove that Judge Giganti showed bias or actual prejudice. Branding the case "unique," Judge Madonia concluded Judge Giganti

rightly took control of the case when he scheduled the emergency hearing and issued defendant injunctive relief. Judge Madonia returned the case to Judge Giganti.

¶ 13 On February 19, 2020, the parties reassembled before the trial court for a hearing on defendant's "Motion for Declaratory Relief" and all other pending motions. In support of the motion, defense counsel argued that after the jury reached its verdict, "there was an agreement between the parties at that time that the satisfaction was going to be sustained upon the payment of the judgment and the cost. I tendered the judgment and the cost to him in proper form and they refused it." Defense counsel noted he and plaintiff's counsel disagreed "about whether or not the lien holder needed to be identified on the draft."

¶ 14 Plaintiff's counsel began the argument by noting, "It has always been the position of the Plaintiff that the day after the verdict was entered on December 13th, interest began to run at 9 percent on the judgment." When the trial court confronted counsel with his own prior objections and arguments about the settlement draft containing the lienholder, counsel responded, "[t]hat is not the real issue, Judge." Plaintiff's counsel's argument at that time centered on postjudgment interest and not the lienholder issue. The trial court noted the argument being presented to the court at the hearing was the first time postjudgment interest had been mentioned as an issue, or mentioned at all. When the trial court pressed counsel to identify where in the pleadings plaintiff raised the issue of postjudgment interest, counsel pointed to the December 27, 2019, e-mail where he told defense counsel he was risking 9% interest by not abiding by the terms of the settlement. In trying to clarify plaintiff's argument and "get to the point," the following exchange occurred:

> "THE COURT: *** The issue I'm trying to address here is
> I don't see anywhere that you mention anything about interest. The

way that I'm reading this, the issue that you and your firm or cocounsel raised have to do with how the draft is made payable to and that's all I'm asking.

And if I—if [defense counsel] was to from your correspondence of the 27th somehow to infer that the real issue had to do with interest, I'm just asking when was that specifically brought up and when did [defense counsel] say, ['*]We're not paying interest for those days[']?

MR. KUEHN:  I don't think he ever did.

THE COURT:  Okay. All right. Go ahead.

MR. KUEHN:  I don't think interest has ever been brought up, but that's what this is all about.

THE COURT:  This is what everything's about is the interest?

MR. KUEHN:  It'[s] all about the interest.

THE COURT:  Oh, okay. Go ahead."

Although plaintiff's counsel went on to argue that had plaintiff accepted defendant's check for $820,243, defendant still would have owed approximately $808 in interest, he admitted he would have negotiated defendant's check if it did not have the lienholder's name on it. Once the parties finished arguing defendant's "Motion for Declaratory Relief," the trial court went through each of the remaining motions individually. Notably, plaintiff withdrew her "Motion to Enforce Judgment."

¶ 15         When the trial court came to "Plaintiff's Response to the Defendant's Request for Equitable Relief and Counter-Request for Relief," the arguments again returned to the postjudgment interest issue. Defense counsel argued the parties agreed to settle this matter without postjudgment interest. Explaining his e-mail offering to pay the judgment and costs only, counsel said: "[T]here was an offer and there was an acceptance. There was an agreement and we fulfilled the terms of our agreement." Defense counsel noted his communications with plaintiff's counsel centered on the lienholder, not postjudgment interest. One of plaintiff's attorneys responded, giving his account of the parties' agreement:

> "Yes, Your Honor. I think it comes down to this, you know, the initial context saying I have authority to pay the 820,000 and cost. The answer, send the check. Okay. Send it. We'll take it. All right.

> [Defense counsel] is saying that unless we said, [']well, wait a minute; no, you got to pay us the interest,['] we couldn't take that check without waiving the interest and that just simply isn't the case. We can take whatever payments he's authorized to pay, but the first $808 of that payment goes to the interest that had run up to that point. We don't need to talk about interest."

As before, the trial court pressed plaintiff's counsel on whether any of the attorneys representing plaintiff demanded postjudgment interest that accrued before the parties came to an agreement on paying the judgment and costs. Plaintiff's counsel answered no, though he claimed defense counsel privately said he would "fight the interest until the end." The court redirected counsel again, asking: "Let's take the other side of the coin. When did you tell him, [']We want that $808

added?[']" Plaintiff's counsel responded, "I did not tell him we wanted anything," but on December 27 his partner and co-counsel informed defense counsel: "Fix the check issues or we're going to—you're risking 9 percent interest from the date of the judgment." As plaintiff's counsel continued to argue the parties' agreement qualified as a settlement, was governed by the settlement statute, and interest accrued from the date of the agreement (December 17th) and was still accruing, the trial court again tried to pin down when plaintiff demanded interest. The trial court asked: "At any time between the 12th and then the 17th of December, 2019, did you indicate to [defense counsel] in any way, shape, or form, phone call, e-mail, speaking to him, whatever the case may be, [']hey, you didn't add in the $808 of interest[']?" Plaintiff's counsel answered, "No."

¶ 16        After going through still more pending motions, the trial court sought one last clarification on the postjudgment issue. This colloquy ensued:

> "THE COURT: Okay. So couple questions and one was actually already answered and that is if—and I'm focusing now on the interest. Mr.—I think it was Mr. Evans indicated that if the check had been written the way that you believe it should have been, the interest would have been for four days totaling $808.
>
> MR. EVANS: And some change.
>
> THE COURT: What change?
>
> MR. EVANS: I'll tell you, $808.76.
>
> THE COURT: And that is at how much per day? Is that 202 and what?
>
> MR. EVANS: $202.19.

THE COURT: Per day. And on that issue alone, Mr. Graham, do you agree with the calculations?

MR. GRAHAM: The calculation is correct.

THE COURT: *** I now know that the interest—the parties agree that interest accrues at $202.19 per day. Does that make sense?

MR. GRAHAM: If it accrues, yeah.

THE COURT: If it accrues. And you don't believe it should accrue for even the four days?

MR. GRAHAM: Not even for the four days.

THE COURT: Do you agree with my $202.19, which is the number you gave me?

MR. EVANS: Yes, Your Honor."

The trial court gave the parties one week to submit proposed orders.

¶ 17　　　　The trial court issued its order regarding defendant's "Motion for Declaratory Relief" on March 12, 2020. The court's order recounted what occurred after the jury's verdict and entry of the judgment on December 12, 2019, noting in three different paragraphs plaintiff did not claim or refer to collection of statutory postjudgment interest. The trial court ultimately "declare[d] that the judgment previously entered herein was and is satisfied in full effective on and after December 17, 2019." The trial court found the following:

> "Defendant offered to pay the Plaintiff, the Plaintiff's attorneys,
> and the known lienholder the full amount of the judgment and
> costs on December 17, 2019 in the specific sum of $820,243.00.

- 10 -

The Plaintiff, by accepting the Defendant's offer as stated, entered into agreement whereby this Court's judgment would be satisfied by payment of that specific sum. Neither the offer nor the acceptance anticipated the payment of statutory post-judgment interest. In fact, the Plaintiff only first demanded such relief of the Defendant and from this Court as part of her Response to Defendant's Request for Equitable Relief and Counter-Request for Relief filed herein February 3, 2020, after the offer, acceptance, and payment of the agreed sum was made and received."

In arriving at this conclusion, the trial court determined, "[p]laintiff's offers to indemnify the Defendant against outstanding liens were inappropriate and unacceptable," and defendant rightly included the lienholders on the initial check. The court determined:

"Defendant has therefore, by the tender of the specific sum of $820,243.00, on December 17, 2019 payable to the Plaintiff, her attorneys, and the known lienholder, and the transmission of that amount on December 26, 2019, performed all acts and done all things required of it in order to secure the satisfaction of the judgment as previously entered herein."

The trial court denied all other pending motions and petitions, except for "Plaintiff's Motion to Dissolve/Vacate Injunction *Nun* [*sic*] *Pro Tunc*," which it granted.

¶ 18 This appeal followed. Plaintiff's brief indicates she negotiated the check dated January 31, 2020, and "deposited the funds on March 18, 2020."

¶ 19 II. ANALYSIS

¶ 20          Plaintiff challenges the trial court's order on three grounds. We reorder and restate them accordingly: (1) the trial court lacked jurisdiction to consider defendant's motion for declaratory relief, (2) the trial court erred in denying plaintiff's petition to substitute the judge for cause, and (3) the trial court erred in finding defendant satisfied the judgment without paying accrued postjudgment interest. We disagree on the first two points and agree with the third. Accordingly, we affirm in part, reverse in part, and remand with instructions for defendant to pay the $808.76 interest that accrued on the judgment before the parties agreed to payment terms plus the interest that has accrued on that sum during the pendency of this appeal.

¶ 21                                    A. Jurisdiction

¶ 22          Illinois's Code of Civil Procedure (Code), specifically section 2-1202, sets parameters for posttrial motions in jury cases. 735 ILCS 5/2-1202 (West 2018). The Code references reserved motions for a directed verdict, motions for judgment notwithstanding the verdict, motions in arrest of judgment, and motions for a new trial (735 ILCS 5/2-1202(b) (West 2018)) and provides these "[p]ost-trial motions must be filed within 30 days after the entry of judgment or the discharge of the jury." 735 ILCS 5/2-1202(c) (West 2018). This court has interpreted section 2-1202(c) to mean that " 'after the 30-day period has expired, *** the trial court loses jurisdiction over the case.' " *Manning v. City of Chicago*, 407 Ill. App. 3d 849, 852, 944 N.E.2d 876, 879 (2011) (quoting *Trentman v. Kappel*, 333 Ill. App. 3d 440, 442, 775 N.E.2d 1041, 1043 (2002)); see also *Kwak v. St. Anthony DePadua Hospital*, 54 Ill. App. 3d 719, 724, 369 N.E.2d 1346, 1349 (1977) ("The failure to timely file a post-trial motion deprives the trial court of jurisdiction to entertain that motion."). A trial court's jurisdiction is a legal question we review *de novo*. *Enbridge Pipeline (Illinois), LLC v. Hoke*, 2019 IL App (4th) 150544-B, ¶ 26, 123 N.E.3d 1271.

¶ 23        Defendant filed his "Motion for Declaratory Relief" on January 14, 2020, after the statutory 30-day deadline for posttrial motions. Plaintiff argues this deprived the trial court jurisdiction to entertain the motion. We disagree.

¶ 24        The posttrial motions considered in section 2-1202 of the Code are those that seek to challenge the jury verdict in some way, *i.e.*, those requesting to alter, modify, or vacate the judgment. And plaintiff is right that "a court has no power to modify, set aside or vacate a final decree thirty days after its rendition." *Comet Casualty Co. v. Schneider*, 98 Ill. App. 3d 786, 790, 424 N.E.2d 911, 915 (1981). Had defendant filed one of the posttrial motions listed in section 2-1202, or had his motion sought to alter the judgment in some way, plaintiff's argument that the trial court lacked jurisdiction would be persuasive. But he did not and, therefore, plaintiff's argument fails to persuade. Defendant's motion did not attack the jury verdict or the trial court's judgment. It merely asked the trial court to declare whether defendant satisfied the judgment when his counsel transmitted a settlement draft for judgment and costs, per the parties' agreement. This court previously explained that even though a trial court lacks jurisdiction to modify or vacate a judgment after thirty days, "it does retain jurisdiction until it has disposed of all matters before it." *Comet Casualty*, 98 Ill. App. 3d at 790. Considering the type of motion defendant filed—one for declaratory relief that did not challenge the judgment—we conclude section 2-1202 does not apply and hold the trial court retained jurisdiction to entertain and rule on the motion.

¶ 25                                B. Petition to Substitute for Cause

¶ 26        Plaintiff next argues the trial court erred in denying her petition to substitute Judge Giganti for cause. We disagree.

¶ 27          Section 2-1001 of the Code provides for substitution of the judge in civil actions, including substituting a judge for cause. 735 ILCS 5/2-1001(a)(3) (West 2018). "Although the statute does not define 'cause,' Illinois courts have held that in such circumstances, actual prejudice has been required to force removal of a judge from a case, that is, either prejudicial trial conduct or personal bias." *In re Marriage of O'Brien*, 2011 IL 109039, ¶ 30, 958 N.E.2d 647. Because we presume a judge's impartiality, the party seeking removal must rebut the presumption by proving the judge's prejudice or personal bias. *O'Brien*, 2011 IL 109039, ¶ 31. We have defined "prejudice" as " 'animosity, hostility, ill will, or distrust towards [a party].' " *People v. Haywood*, 2016 IL App (1st) 133201, ¶ 29, 50 N.E.3d 1237 (quoting *People v. Patterson*, 192 Ill. 2d 93, 131, 735 N.E.2d 616, 638 (2000)). Citing the United States Supreme Court, our supreme court determined bias sufficient to remove a judge for cause must be "a deep-seated favoritism or antagonism that would make fair judgment impossible." (Internal quotation marks omitted.) *O'Brien*, 2011 IL 109039, ¶ 31 (quoting *Eychaner v. Gross*, 202 Ill. 2d 228, 280, 779 N.E.2d 1115, 1147, (2002), quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). We review a trial court's decision on a motion for substitution of judge for cause deferentially, reversing only if the decision goes against the manifest weight of the evidence. *Haywood*, 2016 IL App (1st) 133201, ¶ 29. This means we will reverse the decision only if the trial court's decision was "clearly erroneous or the record support[ed] an opposite conclusion." *Haywood*, 2016 IL App (1st) 133201, ¶ 29.

¶ 28          Plaintiff's "Petition to Substitute for Cause" alleged several instances and rulings where plaintiff believe Judge Giganti demonstrated bias toward her and her attorneys. The petition also outlined the events leading up to the trial court issuing a temporary restraining order enjoining "plaintiff from further pursuing the collection of the judgment *** by way of citation

- 14 -

to discover assets and/or wage garnishment." Plaintiff argued the court demonstrated prejudice and personal bias against her by holding the hearing without plaintiff or her counsel present and by going off the record for a brief time during said hearing.

¶ 29　　　　Judge Madonia reviewed plaintiff's petition and presided over the hearing to consider its merits. Plaintiff's counsel essentially rested on the petition, saying he believed it "shows a pattern of bias." Though counsel did devote some argument to what he believed to be "the last and most serious" instance of bias, namely holding a hearing on and then granting defendant's petition for injunctive relief so quickly it precluded participation from plaintiff's counsel. Counsel specifically highlighted the court going off the record during the hearing, saying, "[t]hat in and of itself I believe, Your Honor, shows bias."

¶ 30　　　　Judge Madonia denied plaintiff's petition. Calling this litigation unique, particularly plaintiff's efforts at collecting a judgment through discovering assets and wage garnishment even after defendant already submitted payment, Judge Madonia saw Judge Giganti issuing the temporary restraining order as "tak[ing] control on an emergency basis," believing "there had at least been some notice provided." Judge Madonia noted plaintiff's petition was "certainly relying on a bunch of things *** that were brought out in trial and pretrial rulings *** [yet] there wasn't even a post-trial motion filed to object to any of this conduct [which] doesn't give the court much concern about the total impact these issues had on [plaintiff] throughout these proceedings." Ultimately, Judge Madonia found plaintiff failed to show bias or actual prejudice on the part of Judge Giganti.

¶ 31　　　　We defer to Judge Madonia's determination here. Given these facts, we cannot conclude the decision to deny plaintiff's petition stands against the manifest weight of the evidence. Our review of the record does not lead us to the opposite conclusion from the trial

court. See *Haywood*, 2016 IL App (1st) 133201, ¶ 29. We do not see where Judge Giganti demonstrated actual prejudice or personal bias toward plaintiff or her counsel—the record did not show animosity, or ill will, or deep-seated favoritism, hostility, or antagonism. See *O'Brien*, 2011 IL 109039, ¶ 31; *Haywood*, 2016 IL App (1st) 133201, ¶ 29. Nor does plaintiff direct our attention to analogous cases where a judge was substituted for cause based on similar allegations. Like the trial court, we find plaintiff failed to demonstrate actual prejudice.

¶ 32                                    C. Statutory Postjudgment Interest

¶ 33            Plaintiff argues the trial court erred in declaring defendant satisfied the judgment without paying statutory postjudgment interest. We agree.

¶ 34            Plaintiff appeals from the trial court's order granting defendant declaratory relief. We review such orders for abuse of discretion. *State Farm Fire & Casualty Co. v. Leverton*, 314 Ill. App. 3d 1080, 1083, 732 N.E.2d 1094, 1096 (2000). " 'Abuse of discretion' means clearly against logic; the question is not whether the appellate court agrees with the circuit court, but whether the circuit court acted arbitrarily, without employing conscientious judgment, or whether, in view of all the circumstances, the court exceeded the bounds of reason and ignored recognized principles of law so that substantial prejudice resulted." *Leverton*, 314 Ill. App. 3d at 1083.

¶ 35            The trial court found defendant satisfied the judgment when he offered to pay the judgment and costs, $820,243, plaintiff accepted said offer, and defendant transmitted payment of that amount in a draft payable to plaintiff, her attorneys, and the known lienholder. Specifically, the trial court determined that when defendant remitted the check on December 26, 2019, he had "performed all acts and done all things required of it in order to secure the satisfaction of the judgment." In so doing, the trial court necessarily found defendant rightly

included the lienholder on the initial check and could not rely on plaintiff's verbal assurances to indemnify him against outstanding liens. Plaintiff does not challenge this latter finding in her appellant's brief. We, therefore, will not review it as plaintiff has forfeited any argument on this issue. See *Cooke v. Illinois State Board of Elections*, 2019 IL App (4th) 180502, ¶ 83, 146 N.E.3d 31 (citing Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018)).

¶ 36　　　　Plaintiff, instead, focuses her argument on the postjudgment interest. She frames the issue accordingly: "This Court must determine what effect, if any, a supposed agreement has on the accrual of interest on the judgment." Framing the issue this way requires us first to determine if the parties in fact entered into an agreement before we determine if the agreement affected postjudgment interest.

¶ 37　　　　We agree with, and defer to, the trial court's determination that the parties entered into an agreement whereby defendant could satisfy the judgment. We do not find the trial court's conclusion to be arbitrary or "without *** conscientious judgment, or whether, in view of all the circumstances, [it] exceeded the bounds of reason." *Leverton*, 314 Ill. App. 3d at 1083. Defendant offered the judgment plus costs and plaintiff accepted. Both parties provided consideration, and each bargained away the option of filing a postjudgment motion challenging an alleged pretrial or trial error or attacking the verdict. See generally *Halloran v. Dickerson*, 287 Ill. App. 3d 857, 867-68, 679 N.E.2d 774, 782 (1997) ("A contract, to be valid, must contain offer, acceptance, and consideration; to be enforceable, the agreement must also be sufficiently definite so that its terms are reasonably certain and able to be determined."). We further agree with the trial court that the parties' bargain did not contemplate postjudgment interest—neither party mentioned it and plaintiff did not demand it until her February 3, 2020, "Response to Defendant's Request for Equitable Relief and Counter-Request for Relief." We do not consider

- 17 -

plaintiff's counsel's reference to defense counsel taking a "gamble with the 9% interest" a demand; it is more akin to an oblique threat.

¶ 38 Having found the parties entered into an agreement and plaintiff forfeited any appellate argument on whether defendant rightly included the lienholders on the initial settlement draft, the question becomes, how does the parties' agreement affect the accrual of postjudgment interest? In other words, did plaintiff waive postjudgment interest? Defendant argued a plaintiff can (and this plaintiff did) waive the right to postjudgment interest. The trial court apparently agreed. Although the trial court's order does not use any variation of the word "waiver," it noted four times plaintiff did not reference collecting postjudgment interest in the parties' communications. Moreover, the trial court's order found, "[n]either [defendant's] offer nor [plaintiff's] acceptance anticipated the payment of statutory post-judgment interest." But neither defendant's brief nor the trial court's order cite authority stating a plaintiff can waive collection of postjudgment interest. Likewise, plaintiff does not cite authority decisively holding that a plaintiff cannot waive collection of postjudgment interest. To answer this waiver question, we examine the postjudgment interest statute and the case law interpreting or applying it.

¶ 39 Section 2-1303(a) of the Code provides:

"[J]udgments recovered in any court shall draw interest at the rate of 9% per annum from the date of the judgment until satisfied ***. When judgment is entered upon any award, report or verdict, interest shall be computed at the above rate, from the time when made or rendered to the time of entering judgment upon the same, and included in the judgment. Interest shall be computed and

charged only on the unsatisfied portion of the judgment as it exists

from time to time." 735 ILCS 5/2-1303(a) (West 2018).

The statute speaks in mandatory terms. Indeed, this court has said, "[t]he language of the statute is positive and self-executing," meaning "[t]he trial court is without authority or discretion to limit the interest which thereby accrues upon a judgment." (Internal quotation marks omitted.) *In re Estate of Marks*, 51 Ill. App. 3d 535, 539, 366 N.E.2d 1077, 1080 (1977); see also *Halloran*, 287 Ill. App. 3d at 862 ("Illinois law provides for a statutorily mandated accrual of interest on judgments."). Pursuant to section 2-1303(a), as a matter of law, interest accrues from the time of the verdict until the court enters judgment, meaning the judgment includes any accrued postjudgment interest. See *Halloran*, 287 Ill. App. 3d at 863 ("The 'judgment' when entered is therefore made up of the verdict amount, plus costs, plus accrued interest from the date of verdict to the date judgment is entered."). The statute further mandates that postjudgment interest continues accruing until the debtor fully satisfies the judgment. 735 ILCS 5/2-1303(a) (West 2018); see also *Halloran*, 287 Ill. App. 3d at 864 ("In the usual case, the debtor's liability to pay interest would continue until all interest and the total judgment were paid in full."). Yet the statute does not preclude a debtor from making partial payments toward the judgment. Indeed, it requires "comput[ing] and charg[ing]" postjudgment interest "only on the unsatisfied portion of the judgment as it exists from time to time." 735 ILCS 5/2-1303 (West 2018).

¶ 40   Though the statute does not address tolling the accrual of postjudgment interest, we find case law instructive on that point. This court previously instructed, "formal tender is necessary with any debt to stop the accrual of interest." *Thomas v. Missouri-Illinois R.R. Co.*, 30 Ill. App. 3d 40, 43, 332 N.E.2d 139, 141 (1975). Our supreme court further instructed a debtor can toll accruing interest by, "pursuant to section 2-1303 of the Code, *** tender[ing] payment

- 19 -

of the judgment, costs and interest accrued on the judgment to the date of tender." *Yassin v. Certified Grocers of Illinois, Inc.*, 133 Ill. 2d 458, 462, 551 N.E.2d 1319, 1321 (1990).

¶ 41          Since postjudgment "[i]nterest is purely a statutory creation" (*Noe v. City of Chicago*, 56 Ill. 2d 346, 350, 307 N.E.2d 376, 379 (1974)), the statute speaks in mandatory terms, and there is no authority to the contrary, we conclude a judgment creditor cannot waive the right to have postjudgment interest begin accruing when the verdict is read and when the judgment is entered. By operation of the statute, postjudgment interest automatically begins accruing at the verdict, it is included in the judgment, and it continues accruing until the judgment is fully satisfied.

¶ 42          Illinois law certainly favors the freedom of contract and allows "[p]arties [to] contract away rights, even those of a constitutional or statutory nature." *City of Springfield v. Ameren Illinois Co.*, 2018 IL App (4th) 170755, ¶ 38, 127 N.E.3d 703. But when a contract requires a party to forgo a statutory right, the agreement should be clear that party is intentionally relinquishing a known right. Though not on all fours with the instant case, we find instructive this court's opinion in *Northwestern Yeast Co. v. City of Chicago*, 301 Ill. App. 303, 22 N.E.2d 781 (1939). There, in the context of condemnation litigation, the defendant paid the plaintiff the total judgment amount ($231,737) by a check; however, the subject of statutory interest was not broached until the plaintiff instituted proceedings to collect the interest. *Northwestern Yeast*, 301 Ill. App. at 304. Reviewing precedent from our supreme court, this court noted the prior " 'ingenious argument of counsel, repeated here, that when [a party] accepted payment of the principal of the judgment they abandoned whatever claim they might have had to interest.' " *Northwestern Yeast*, 301 Ill. App. at 306-07 (quoting *Feldman v. City of Chicago*, 363 Ill. 247, 254, 2 N.E.2d 102, 105 (1936)). But, like here, the court noted that " 'argument *** finds no

- 20 -

support *** in the provisions of the statutes, or in the decisions of this court. It ignores the essential fact that here the interest is purely statutory, and arises neither from an agreement, express or implied, nor by way of damages or penalty for delay in payment of the principal.' " *Northwestern Yeast*, 301 Ill. App. at 307 (quoting *Feldman*, 363 Ill. at 254). The *Northwestern Yeast* court relied upon *Feldman* when evaluating the defendant's "suggestion that by failing to protest" interest "plaintiff waived its claim" to the statutory interest owed. *Northwestern Yeast*, 301 Ill. App. at 309. The *Northwestern Yeast* court held, "the mere failure of plaintiff to protest that interest was not included at the time of the judgment was paid did not amount to a waiver." *Northwestern Yeast*, 301 Ill. App. at 309.

¶ 43        Even though the *Northwestern Yeast* court did not consider the same type of litigation nor the same statute governing interest, we follow its lead to the same conclusion. Because the postjudgment interest in this case arose automatically by statute and not by agreement of the parties, we cannot endorse defendant's argument, nor the trial court's implicit conclusion, that plaintiff waived her right to collect postjudgment interest when she accepted defendant's offer to pay the judgment and costs. Here, the jury reached the verdict and the trial court entered judgment on the same day, December 12, 2019, meaning postjudgment interest began accruing automatically on December 13, 2019. So by the time the parties reached their agreement, postjudgment interest had been accruing for a few days, totaling $808.76, and by operation of the statute, that sum became part of the amount defendant owed to satisfy the judgment. The trial court abused its discretion in declaring the judgment fully satisfied when defendant failed to pay the accrued postjudgment interest because it seemingly "ignored recognized principles of law." *Leverton*, 314 Ill. App. 3d at 1083.

- 21 -

¶ 44        We can endorse and affirm the trial court's order to the extent that we conclude defendant partially satisfied the judgment when he otherwise remitted payment on December 26, 2019. Plaintiff contends that defendant's failure to tender the full amount of the judgment means postjudgment interest continued accruing on the whole judgment, $820,000, until plaintiff negotiated the check for $820,243 on March 18, 2020. Thereafter, according to plaintiff, interest kept accruing on the unsatisfied portion of the judgment. We disagree.

¶ 45        Plaintiff unequivocally accepted defendant's offer to pay "the judgment ($820,000.00) and costs ($243.00) *** in consideration of the jury's verdict returned December 12, 2019," and defendant paid that sum pursuant to the agreement. That is partial satisfaction, which section 2-1303 contemplates. See 735 ILCS 5/2-1303 (West 2018); see also *Illini FS, Inc. v. Myerscough*, 137 Ill. App. 3d 861, 869-70, 484 N.E.2d 1385, 1390 (1985) ("[T]o the extent that the creditor accepts in partial satisfaction installment payments toward the debt he is no longer being denied the use of such sums and is no longer entitled to interest thereon."). Although defendant's payment did not amount to the formal tender necessary to toll the accruing interest, defendant fulfilled the agreement. Indeed, plaintiff said she would have cashed the check had it not included the lienholder. Recall, plaintiff forfeited any argument challenging the trial court's determinations as to defendant including the lienholder on the first settlement draft. Plaintiff, therefore, erroneously rejected the first settlement draft. Contrary to her current argument, she could have accepted the check without waiving her right to collect postjudgment interest.

¶ 46        At the February 19, 2020, hearing, plaintiff's counsel pivoted from their prior arguments about the propriety of including the lienholder on the December 26, 2019, settlement draft to arguments solely relating to postjudgment interest. To the trial court's surprise,

plaintiff's counsel acknowledged: "I don't think interest has ever been brought up, but that's what this is all about." Though plaintiff's two attorneys present at the hearing sometimes disagreed on what legal theory their client was actually arguing or relying upon, both attorneys argued defendant owed their client $808.76 when the parties entered their agreement and, furthermore, both said they would have negotiated the check had it not included the lienholder. We hold plaintiff to those arguments and concessions. She is estopped from arguing otherwise now. See generally *First Bank of Highland Park v. Sklarov*, 2019 IL App (2d) 190210, ¶ 14, 137 N.E.3d 218 (explaining equitable principles prevent parties from giving a reason for their conduct and decision and then changing that reason and putting their conduct and decisions upon other and different considerations) (quoting *1002 E. 87th Street, LLC v. Midway Broadcasting Corp.*, 2018 IL App (1st) 171691, ¶ 20, 107 N.E.3d 868).

¶ 47    By plaintiff's own admission, defendant paid all but $808.76 of the judgment when he transmitted the settlement draft on December 26, 2019. But since the self-executing nature of the postjudgment interest statute prevented plaintiff from waiving the accrued $808.76 in interest, defendant did not fully satisfy the judgment. Defendant, therefore, partially satisfied the judgment when he remitted payment on December 26, 2019, according to the agreement. As plaintiff's counsel argued at the hearing, the first settlement draft (which plaintiff erroneously rejected) should have been applied first to the accrued interest ($808.76) and then applied to the judgment. Consequently, defendant paid all but $808.76 of the judgment. Per the statute, interest has been accruing on that sum at a rate of 9% per annum ever since. 735 ILCS 5/2-1303 (West 2018) ("Interest shall be computed and charged only on the unsatisfied portion of the judgment as it exists from time to time.").

¶ 48    We pause to remind plaintiff's counsel of their duty to remain civil during all phases of litigation, including the appellate process, no matter how contentious counsel believes the litigation to be. Though counsel might "verily believe" they were zealously advocating for their client, their comments labeling the trial court's order "a paraphrase" of defendant's motion that was not "bas[ed] on sound judicial analysis or scholarship" exceed the bounds of civil advocacy. The trial court informed the parties he did not have a secretary and asked for proposed orders in Microsoft Word format to aid in writing this order. Attacking the order as "merely a paraphrase" is at the very least poor form and at the most, outright disingenuous considering those circumstances. Likewise, the appellate briefing is no place for counsel's suggestion the trial judge is not qualified to sit on the bench by sarcastically bemoaning how they should expect trial errors "when the selection of our judiciary is largely political as opposed to merit based." Although an appeal requires the parties to point out alleged errors, counsel need not resort to hyperbole and maintain this case differs from all others because of "the *egregious* nature of how the Court managed this litigation." (Emphasis added.) Finally, we note counsel's accusations that the trial court participated in a "*pure sham*" when scheduling a hearing or aided "defense counsel's effort *to rob* the plaintiff of her post-judgment interest" even further exceed the boundaries of civil advocacy—they are inappropriate, uncivil comments unbecoming of attorneys practicing before this court. (Emphases added.) The appellant's brief is not a license to malign the trial court. We echo our supreme court's admonition: "Briefs should not contain language which is disrespectful to the court or its officials," and "it [is] the duty of every lawyer to maintain a respectful attitude to the court for the maintenance of its dignity and its supreme importance." *Ambrosius v. Katz*, 2 Ill. 2d 173, 179, 117 N.E.2d 69, 73 (1954).

¶ 49                                    III. CONCLUSION

- 24 -

¶ 50 For the reasons stated, we affirm in part and reverse in part. We remand to the trial court with instructions for defendant to pay the unsatisfied portion of the judgment ($808.76) plus the accrued interest on that amount.

¶ 51 Affirmed in part and reversed in part; cause remanded with directions.