2025 IL App (1st) 242138-U

No. 1-24-2138

Order filed March 24, 2025

Sixth Division

NOTICE: This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

|  |  |  |
|---|---|---|
| NATIONAL SURETY CORPORATION, | ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) |  |
| v. | ) ) | No. 17 CH 14975 |
| THE HONORABLE BARBARA J. HOUSER (RET.), IN HER CAPACITY AS TRUSTEE OF THE BSA SETTLEMENT TRUST, *et al.* | ) ) ) ) | The Honorable Alison C. Conlon, Judge, presiding. |
| Defendants-Appellees. | ) |  |

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justices C.A. Walker and Gamrath concurred in the judgment and opinion.

**ORDER**

¶ 1     *Held*: Trial court did not abuse its discretion in staying case *sua sponte*.

¶ 2     After 18 former Boy Scouts sued the Boy Scouts of America for failing to protect them from sexual abuse by a Chicago-area scout leader, National Surety Corporation filed a complaint seeking a declaration that it had no obligation to provide coverage for BSA under its excess insurance policies. Another BSA insurer, Allianz Global Risk US Insurance

Company, which settled one of the claims, filed counterclaims against BSA and its other insurers.

¶ 3   A few years later, faced with a rapidly increasing number of sexual abuse claims, BSA filed for bankruptcy. As part of its bankruptcy plan, BSA created a Victims Compensation Settlement Trust, which enjoined claims against BSA. Instead of filing claims directly against BSA, victims were required to submit their claims to a Trustee responsible for assessing their validity and providing compensation. The plan also transferred to the Trustee the rights that either BSA or abuse victims had to insurance coverage. (Currently, the bankruptcy court's order confirming the plan is under appeal in the U.S. Court of Appeals for the Third Circuit.)

¶ 4   Subsequently, the Trustee filed a complaint in a Texas U.S. District Court, seeking coverage for all abuse claims against BSA. Defendants include National Surety, Allianz, and nearly 90 additional insurers. The case has been stayed pending the outcome of the bankruptcy plan appeal.

¶ 5   Meanwhile, the Trustee moved to dismiss National Surety's complaint under section 2-619(a)(3) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(3) (West 2022)), arguing the Texas case involved the same parties and the same cause of action. Shortly afterward, National Surety and Allianz moved to amend their pleadings to raise new issues from the bankruptcy proceedings. Rather than allow the motion to dismiss, the circuit court stayed the case *sua sponte* (Latin for "of its own accord") without considering the insurers' motions to amend.

¶ 6   National Surety and Allianz argue the circuit court abused its discretion by (i) not granting leave to amend and (ii) finding that the Trustee met the threshold requirements for a stay. We affirm. The Trustee never sought the stay; the circuit court properly exercised its discretion in *sua sponte* entering the stay without ruling on the insurers' motions to amend.

¶ 7                                          Background

¶ 8          In December 2012, 18 former Boy Scouts sued BSA and the Chicago Area Council, alleging they knowingly and intentionally permitted, failed to prevent, or fraudulently concealed hundreds of known instances of sexual abuse by former Chicago area Scout leader Thomas Hacker between 1980 and 1988 (Hacker claims). When BSA sought insurance coverage for the Hacker claims, National Surety filed a seven-count complaint seeking a declaration that it had no obligation to provide coverage under excess insurance policies issued to BSA (Illinois case). National Surety also named as defendants 19 of BSA's other insurers, including Allianz, along with the 18 plaintiffs (Hacker claimants) in the underlying complaint. Allianz, which had settled with BSA, filed an answer and counterclaims against BSA and its other insurers.

¶ 9          BSA filed a complaint in Texas state court, where BSA has its headquarters, to litigate the coverage issues related to the Hacker claims. National Surety requested a stay in favor of the pending Illinois case (Texas state case). But the court denied a stay and denied National Surety's motion to reconsider. National Surety appealed, and the Texas Court of Appeals issued an emergency stay pending that appeal.

¶ 10         In the Illinois case, BSA moved to dismiss on *forum non conveniens* grounds, which the circuit court denied without prejudice. BSA then moved to dismiss under section 2-619(a)(3) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(3) (West 2022)), arguing that the Texas state case involved another action between the same parties for the same cause. The circuit court noted that National Surety's motion to reconsider was still pending in Texas, so it continued BSA's motion to dismiss pending its resolution.

¶ 11        By 2020, facing an increasing number of sexual abuse claims and mounting liabilities and litigation costs, BSA filed for relief under Chapter 11 of the Bankruptcy Code. *See In re Boy Scouts of America*, 642 B.R. 504, 532 (Bankr. D. Del. 2022) (the "BSA Bankruptcy Proceedings"). The bankruptcy automatically stayed the underlying sexual abuse claims and the ongoing coverage actions in Illinois and Texas state courts. Before filing for bankruptcy, BSA settled several abuse claims, including those of Hacker claimants.

¶ 12                          BSA's Bankruptcy Plan

¶ 13        During the bankruptcy proceedings, more than 82,000 individuals filed claims alleging sexual abuse in BSA's scouting programs. To handle this large number of claims, BSA's bankruptcy plan created a Victims Compensation Trust, tasking a Trustee to evaluate claims and pay those deemed legitimate. The plan released BSA and its local councils from all liability and transferred many of their assets to the Trust, including their rights under insurance policies and the insurance proceeds from settled claims.

¶ 14        The bankruptcy plan designated the Trust as the sole entity authorized to pursue claims against insurers related to the transferred insurance policies. The Plan enjoined "all [p]ersons that have held or asserted, that hold or assert, or that may in the future hold or assert any claim of action *** against any [i]nsurance [c]ompany based upon, attributable to, arising out of, or in any way connected with any [i]nsurance policy" from "taking any action for the purpose of or directly or indirectly collecting, recovering or receiving payments, satisfaction, or recovery with respect to any such claim or cause of action[.]"

¶ 15        In September 2022, the bankruptcy court confirmed BSA's bankruptcy plan and lifted the automatic stay on the Illinois and Texas state court coverage actions. National Surety, Allianz,

and others appealed the confirmation of the bankruptcy plan. That appeal remains pending in the Third Circuit Court of Appeals.

¶ 16                                     Post-Bankruptcy Litigation

¶ 17         The day before the automatic stay on state court coverage cases was lifted, the Trustee filed a complaint in the United States District Court for the Northern District of Texas (Texas federal case) against National Surety, Allianz, and nearly 90 other insurers. The Trustee sought coverage under the insurance policies transferred to her under the bankruptcy plan—the abuse claims filed during the bankruptcy case and claims BSA settled before declaring bankruptcy. The Trustee characterized the complaint as a "comprehensive" coverage action aimed at resolving all coverage for the abuse claims under all available policies, more than 3,000 policies and 91 insurers.

¶ 18         National Surety and Allianz moved to dismiss; other insurers sought a stay pending U.S. Supreme Court resolution of *Harrington v. Purdue Pharma, LP*, 603 U.S. 204 (2024). *Purdue Pharma* involved releases by third-party, non-debtor parties under the Bankruptcy Code, like the local councils that granted releases under BSA's plan in exchange for transferring their insurance rights to the Trust.

¶ 19         In June 2024, after the U.S. Supreme Court ruled in *Purdue Pharma*, the Texas federal court judge granted the insurers' request to continue the stay until resolution of the appeal of the bankruptcy plan. (The parties later agreed the *Purdue Pharma* decision had no impact on BSA's bankruptcy.)

¶ 20         The Trustee obtained a nonsuit in the Texas state case and, after substituting into the Illinois case, moved to dismiss under section 2-619(a)(3) of the Code of Civil Procedure because another action was pending in federal court between the same parties for the same cause.

National Surety sought leave to file an amended 25-count complaint. Allianz also sought leave to amend its answer and counterclaims to add claims against the Trustee.

¶ 21    The circuit court stayed the case *sua sponte* and ordered the parties to contact the court to obtain a status date within 14 days of the Third Circuit's decision. The court neither granted nor denied the motion to dismiss nor did it address National Surety's and Allianz's motions for leave to amend.

¶ 22    In a written ruling, the circuit court disagreed with National Surety that the Hacker claimants were not parties to the Texas federal case. It noted that the Hacker claimants had settled their claims before the bankruptcy and that even if they had not settled, they did not need to be named as parties in the Texas federal case because "[t]heir rights now vested with the Trustee" under the bankruptcy plan, and "she represents their interests."

¶ 23    The circuit court also found the "same cause" requirement satisfied, rejecting National Surety's argument that this requirement was not met because the Texas federal case lacked "specific factual allegations." The court noted that the Texas federal case involved coverage for all abuse claims, including the Hacker claims. Additionally, the circuit court rejected Allianz's claim that the Texas federal case did not include its counterclaims against other insurers, stating that "the time for Allianz and others to assert such counterclaims has not yet come" in the Texas federal case, and Allianz could plead them "if and when the time comes."

¶ 24    The court also went through the so-called *Kellerman* factors: (i) comity, (ii) prevention of multiplicity, vexation, and harassment, (iii) likelihood of obtaining complete relief in a foreign jurisdiction, and (iv) the *res judicata* effect of a foreign judgment in the local forum. *Kellerman v. MCI Telecommunications Corp.,* 112 Ill. 2d 428, 447-48 (1986). The court found that the bankruptcy plan "fundamentally changed the litigation landscape" and that the "consolidated,

comprehensive [Texas federal] action," which includes "approximately 83,000 more abuse victims," " 'dwarfs' the scope of this action." If the [Illinois] case were to continue, the court found, "multiplicity would be unavoidable with a very real possibility of inconsistent results." Based on those concerns, the court found that the second, third, and fourth *Kellerman* factors were satisfied.

¶ 25    Regarding comity, which involves deferring to the interests of a foreign jurisdiction, National Surety focused on the substantial duration of the Illinois case compared to the recently filed Texas federal case. The circuit court, citing *A.E. Staley Manufacturing Co. v. Swift & Co.*, 84 Ill. 2d 245, 252 (1980), stated that this factor is not determinative and that even if it were given greater weight, the Illinois case is still at the pleading stage and is not "meaningfully ahead" of the Texas federal case. Additionally, the court recognized that Texas had ties to coverage disputes before the bankruptcy because BSA had its headquarters there since 1978, and its insurance policies were issued to it at its Texas headquarters. Furthermore, after the bankruptcy plan, Texans had the second-highest number of abuse claims.

¶ 26    Regarding the appropriate relief, the circuit court identified at least two "significant unknowns" that indicated a stay appropriate. First, the appeal of BSA's bankruptcy plan was still pending in the Third Circuit and "may or may not have an impact on the Plan, the Trust, and the Texas Federal Action." Second, it was uncertain whether the Texas federal case would survive the pending motions to dismiss and allow Allianz and other insurers to assert inter-insurer claims. If the Texas federal case does not proceed beyond the pleading stage, the dismissal of this case could conceivably deprive Allianz of the opportunity to pursue "the inter-insurer claims it has already asserted here."

¶ 27  National Surety and Allianz argue that the circuit court erred by (i) failing to rule on their motions to amend before ruling on the Trust's motion to dismiss and (ii) granting a stay despite the Trust having not satisfied the threshold requirements of section 2-619(a)(3) of the Code or any of the *Kellerman* factors.

¶ 28                                   Analysis

¶ 29                        Motion to Amend Pleadings

¶ 30  National Surety and Allianz contend the circuit court erred in ruling on the Trust's motion to dismiss without ruling on their motions to amend their pleadings despite Illinois' liberal pleading standards. See *Henderson-Smith & Associates, Inc. v. Nahamani Family Service Center, Inc.*, 323 Ill. App. 3d 15, 26 (2001) (leave to amend freely given under 735 ILCS 5/2-616(c) (West 2022)). They further assert that granting a stay encourages forum shopping by BSA and the Trustee, which is disfavored (*Dawdy v. Union Pacific R.R. Co.*, 207 Ill. 2d 167, 174 (2003)).

¶ 31  The Trust counters that the circuit court was exercising its inherent discretion to manage its docket and did not abuse that discretion by choosing to address one motion rather than another. See *Panos Trading LLC v. Forrer*, 2023 IL App (1st) 220451, ¶ 38 (Illinois courts have inherent power, independent of rule or statute, to manage own dockets to dispose of cases in orderly and expeditious manner and "[w]e are *** unmoved by [the] argument that the circuit court should have resolved [a] motion to dismiss *** prior to resolving [a] petition to revive the judgment.")."

¶ 32  National Surety and Allianz do not dispute the circuit court's discretion to manage its docket. Instead, they argue, based on *Kern v. DaimlerChrysler Corp.*, 364 Ill. App. 3d 708, 714 (2006), that a court abuses its discretion when choosing to reach one motion over another

prejudices a party on the merits. They claim prejudice arises because had the circuit court ruled on their motions before the Trustee's motion, the court would not have concluded that the Texas federal case is more comprehensive and likely to provide complete relief. National Surety further asserts that the allegations in its amended complaint contradict the circuit court's finding that Texas has a greater connection to the parties' dispute under the *Kellerman* factors.

¶ 33     Illinois' liberal policy toward amending pleadings does not give litigants an absolute right to amend their complaints. *Grove v. Carle Foundation Hospital*, 364 Ill. App. 3d 412, 417 (2006). Granting the motion to amend was not guaranteed. Besides, even had the court granted leave to amend, a stay pending the bankruptcy plan appeal was sensible. Several issues National Surety raises in its proposed amended complaint stem from the bankruptcy proceeding. If the case proceeds, National Surety and Allianz likely will have an opportunity to obtain a ruling on their motion to amend.

¶ 34     Nonetheless, a more fundamental ground underlies our decision. National Surety contends, "by deferring ruling on National Surety's motion and *deciding* the Trustee's motion to dismiss based on the original complaint," the circuit court "*in effect* denied National Surety's motion for leave to amend." (Emphasis added.) On the contrary, the circuit court exercised its inherent powers to manage its docket, holding the motions to amend and the motion to dismiss in abeyance and instead stay the case. But that has not prevented National Surety and Allianz from arguing as if the Trustee's motion to dismiss was decided and the court "in effect" denied their motions. Thus, their entire argument ignores that the motions to amend remain pending before the circuit court.

¶ 35                         Motion to Dismiss/ Sua Sponte Stay

¶ 36    National Surety and Allianz argue that the circuit court erred in granting a stay because two of the three threshold requirements were not satisfied: (i) no other "pending" action existed, and (ii) the two cases do not involve the "same parties." Allianz also contends its counterclaims and the Trust's claims in the Texas federal case arise from the "same cause." Both insurers argue that none of the four *Kellerman* factors support granting a stay.

¶ 37    As National Surety admits in its opening brief, the circuit court "*sua sponte* stayed this case" and "[t]o be clear, the trial court did not grant the relief requested by the Trustee (dismissal)." But, again, that has not prevented National Surety and Allianz from arguing as if the Trustee moved for a stay under Section 2-619(a)(3) of the Code of Civil Procedure. Since the circuit court entered the stay on its own accord, all of National Surety's and Allianz's arguments that the Trust must demonstrate by clear and convincing evidence the propriety of the stay are in conflict with the actual proceedings and are therefore meritless.

¶ 38    The circuit court's explanation as to why "the Illinois and Texas federal actions involve the same parties" and "same cause" along with reviewing the *Kellerman* factors amounted to a courtesy. Judges should always provide reasons for their decisions, and here, the circuit court practiced effective judging.

¶ 39    Moreover, while the court discussed the Illinois and Texas federal actions, the reason for the stay related to the pending appeal of the bankruptcy court's order confirming the plan. The circuit court's order says as much by requiring the parties to obtain a status date within 14 days of the Third Circuit's decision. Another reason provided by the circuit court was the uncertainties surrounding whether the Texas Federal case "will survive the pending motions to dismiss and proceed to a point where Allianz and other insurers will have the opportunity to assert interinsurer claims."

¶ 40    To repeat, the circuit court acted well within its discretion by holding the motions until the Third Circuit rules. A court is deemed to have abused its discretion when its ruling is "arbitrary, fanciful, or unreasonable, or when no reasonable person would take the same view." *Favia v. Ford Motor Co.*, 381 Ill. App. 3d 809, 815 (2008). Nothing argued by either National Surety or Allianz sufficiently suggests any abuse of discretion.

¶ 41    Furthermore, courts are not required to consider all or any *Kellerman* factors when deciding whether a stay is warranted, even if the Trustee had requested a stay. See *Kapoor*, 298 Ill. App. 3d at 789 ("*Kellerman* and its progeny state that courts should, not shall, consider them."). Consequently, the premise on which National Surety's and Allianz's arguments depend ignore that the circuit court raised the issue of the stay *sua sponte*. Nothing requires us to engage in the pretense of imputing the stay to the Trustee.

¶ 42    Affirmed.